**STATE of Missouri, Respondent,**

**v.**

**Clifford Carlie WYATT, Appellant.**

**No. 44236.**

Supreme Court of Missouri.

Division No. 2.

March 14, 1955.

Morris A. Shenker, St. Louis, for appellant.

John M. Dalton, Atty. Gen., John W. Inglish, Asst. Atty. Gen., for respondent.

BROADDUS, Special Judge.

Appellant, Clifford Carlie Wyatt, was found guilty by a jury in the Circuit Court of the City of St. Louis, Missouri, on a charge based on section 563.160, RSMo 1949, V.A.M.S., which relates to the molestation of a minor. The jury assessed his punishment at a term of one year imprisonment in the City Jail. From the judgment entered, the defendant appealed.

The first witness called by the State was James King, a member of the St. Louis Police Department. He identified a photograph (Exhibit No. 1) which represented a particular location in the City of St. Louis at Jasper Park Road and Arsenal Street.

The next witness was Mrs. Louise Heins, who testified that she was the mother of Linda Lou Heins, and that the date of the latter's birth was January 30, 1943. Mrs. Heins stated that she was a teacher at the Heege School, and that on the morning of May 20, 1953, she went to her usual place of employment at the school, leaving her home about 5 minutes to eight, and arriving at the school about eight o'clock; that when she left home her daughter and another school teacher who roomed with them were still at home; that the next time she spoke to her daughter Linda was about 9:30 that morning. At that time she saw her at Mrs. Heins' classroom in the school; that she left with her daughter at that time to go to the principal's office and from there went to Dr. Dripp's office; that on the afternoon of the same day she and her daughter went with St. Louis police officers to the Second District Police Station where she saw defendant.

Linda Lou Heins then testified that she was 10½ years of age; that on May 20, 1953, she was attending the fourth grade at the Heege School; that she left home about seven o'clock in the morning and was going to school and at that time she was alone; that the first time she saw the defendant was at the corner of McKenzie and Staley Roads and at that time he was in an automobile of a black color; that the defendant had a newspaper and "he pointed to a section of the paper and asked me if I knew where it was;" that the door of the car was open; that defendant pulled her in the car, "locked the door and drove away," going north on McKenzie; that at that time she saw three boys at a stop sign; that when she passed the boys while in the automobile she "made a sign" with her eyes; that she saw one of the boys pick up a pencil which was on the ground and go to the back of the stop sign. She was shown Exhibit No. 1, and stated that it was a picture of where the defendant had stopped the automobile and pointed out a position on the picture about a half block down one of the streets shown thereon; that after the car stopped the defendant grabbed her and held her down so that she could not get out of

the car, and pulled her pants down and stuck his finger in her and "moved it;" that the car remained there about ten minutes and they then drove off and she got out of the car across the street from the school; that she then went straight to her mother's classroom, spoke to her mother and from there went to the principal's office, and then to Dr. Dripp's office; that the next time she saw the man who had molested her was at the police station.

Officer King was recalled and stated that the defendant was arrested in front of his home in St. Louis, and then taken to the police station; that the defendant told the officer in the presence of the little girl that on the morning of May 20th he was driving around and passed the school building; that at that time he observed the girl, whom he identified as Linda Lou Heins, walking along the road; that he asked the girl for some directions and when she came over to his car he pulled her into the car and, after driving around with her for some time, stopped somewhere near a large building; that after stopping the car he placed a towel under the little girl and forced her panties down and put his left forefinger into her vagina for about ten minutes, after which he drove the girl back to where he had picked her up.

Mrs. Heins was then recalled and testified that she saw the defendant on the afternoon of the 20th; that he said he had seen the child, and that he had her in the car; that she saw the defendant the following morning at the police station about eleven o'clock, and that he made a statement substantially to the same effect as previously stated by Officer King.

Gene Evans testified that he was a member of the school boy patrol of Heege School; that on the morning of May 20, 1953, about eight or eight-thirty he was in front of the school with another boy by the name of Merrill Smith; that they were standing near a stop sign; that an automobile went through the stop sign and he wrote the license number on the back of the school stop sign; that he could not see inside the car or see how many people were in it.

Thereupon the State offered for the purpose of identification Exhibit 2, which was identified by the witness as the bottom part of the stop sign upon which he had written the license number. Later the exhibit was admitted in evidence over appellant's objection.

Merrill Smith testified similarly to Gene Evans. He said that he could not see inside the car; that the car was of a dark color, and that as it passed he read off the license number to the other boy.

Dr. Dripp testified that he examined Linda Lou on May 20, 1953, and found that she had a laceration of the perineum; that he used antiseptics in the vagina of the girl and put several sutures in the laceration and administered penicillin.

The defendant testified that on the morning of May 20th, 1953, he left his home about 7:30 and took his wife to the Chase Candy Company on Gravois Avenue in St. Louis where she was employed; that after he let his wife off he returned to his home and got his two children ready for school. Leaving his home again about 10:30, he went to the Colonial Bakery to apply for work; that after he left the bakery he went to several stores and returned home about one o'clock in the afternoon; that about an hour later he went to a place in southeast St. Louis to seek employment. Upon arriving home he was arrested and taken to the police station and questioned by the officers; that he saw the little girl and her mother in the police station about five o'clock that afternoon when he was placed in a room with another man; that he was then taken into another room with another officer and questioned about thirty minutes; that he told the officers that he "didn't know anything about it;" that the officers told him that if he did not tell it that way he would be given the gas chamber; that when he was further questioned as to where the little girl was he told whatever the police told him to say. He denied ever seeing the little girl on the 20th prior to seeing her at the police station. He stated that he had never been convicted of a crime; that he was told by the officers that if he would admit this offense, he would get to see his wife and "that it would all be fixed up."

Appellant makes five assignments of error: First, that the court erred in its restriction of appellant's right to cross-examine two of the State's witnesses. Second, that the court erred in overruling appellant's objection to the statement made by one of these witnesses that appellant after his arrest had refused to answer certain questions. Third, that the court erred in admitting in evidence Exhibit No. 2 because it was not shown to have been connected with the appellant in any way. Relative to this assignment, the State in its brief says: "We have no quarrel with appellant's contention that before an exhibit is admissible it must be shown to have some connection with the defendant. *Concededly, that was not shown here."* Following that concession the State's brief points out that the point is not preserved for review because no proper and timely objection was made by appellant.

Since we have arrived at the conclusion that this judgment must be reversed for another reason, we need not consider the above points. The questions therein presented may not and, in all probability, will not again arise.

We should, however, consider appellant's fourth assignment. It deals with the third paragraph of Instruction No. 1, which reads as follows: "If upon consideration of all the evidence in the case and in the light of the Court's instructions you find and believe from the evidence, beyond a reasonable doubt, that at and in the City of St. Louis and State of Missouri, on the 20th day of May, 1953, the defendant, Clifford Carlie Wyatt, in the presence of a certain minor, to-wit, Linda Lou Heins, of the age of ten years, did then and there wilfully and feloniously take indecent and improper liberties with said minor by removing the panties of said minor and by touching her vagina and then thereby did annoy and molest said minor, then you will find the defendant guilty of molesting a minor; and unless you so find

all the facts to be, you will acquit the defendant of molesting a minor."

Appellant says that the instruction "assumed as true and therefore took away from the jury's consideration the vital questions of whether a minor was involved in this cause, the age of the child, and whether the alleged acts of the defendant took place in the presence of said minor." Linda stated that she was 10½ years of age. Her mother testified to the same fact. Not only was that testimony not disputed, but its truthfulness seems to have been conceded. Note the following questions put to Linda by appellant's counsel while she was on the stand. "How tall was that man that picked you up, *little girl? Were there any little boys in your class* that were late for school that day also? Were there any *other children* in the block at that time?"

This court in numerous cases has held that it is not reversible error for an instruction to assume the existence of a fact which has been clearly proved and is undisputed. State v. Reynolds, 345 Mo. 79, 87, 131 S.W.2d 552, 556; State v. Moore, Mo.Sup., 80 S.W.2d 128, 131.

It is also claimed that by instructing the jury that the defendant "did then and there wilfully and feloniously take indecent and improper liberties with said minor by removing the panties of said minor and by touching her vagina," the court "again made an assumption of a disputed fact." This complaint is also without merit. The commencement of said paragraph with the use of the word "If" clearly indicated that the matters complained of were not assumed to be true, but must be found by the jury from the evidence, beyond a reasonable doubt. It is also to be noted that the closing words of the instruction are "and unless you so find all the facts to be, you will acquit the defendant * * *."

What we have just said applies with equal force to appellant's additional claim that the instruction assumed that the alleged acts of appellant were committed in "the presence of" said minor.

In his fifth and last assignment appellant asserts that the court erred in overruling his objection and in failing to declare a mistrial on account of alleged improper argument made to the jury by the Assistant Circuit Attorney. The remarks complained of are:

"It doesn't take long to tell the story; it didn't take long to happen. Let me tell you this, gentlemen. He got on the stand, the defendant got on the stand. Who can identify where he was that morning other than his wife and two kids? I am not going to comment about his two kids; I am not going to comment about his wife not in court here * * *."

Immediate objection was made by appellant's counsel to said argument, but this objection together with the further request that the remarks be stricken from the record and that a mistrial be declared were overruled by the court.

Our statute, § 546.270, provides that: "If the accused shall not avail himself or herself of his or her right to testify, or of the testimony of his wife or husband, on the trial in the case, it shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, nor be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place."

This court in the case of State v. Woolsey, Mo.Sup., 33 S.W.2d 955, 957, said: "The reference by counsel for the state to the defendant's failure to call his wife as a witness was manifestly improper under the statute and numerous decisions of this court."

Consider the remark of the Assistant Circuit Attorney in the instant case: "Who can identify where he was that morning other than his wife and two kids?" How could a more obvious and pointed reference be made to the failure of the defendant's wife to testify? The clear inference to be drawn from the argument is that the defendant's testimony was not to be be-

lieved since his wife did not take the stand and corroborate his statements.

The following language used by this court in the case of State v. Conway, 348 Mo. 580, 154 S.W.2d 128, 134, is clearly applicable to the instant case: "* * * the privilege against self-incrimination is a part of the Bill of Rights, a personal privilege, guaranteed by the Constitution in unambiguous language; and the statutory protection against comment, by court or counsel, is a plain legislative mandate, the underlying policy of which is and was for the draftsmen of the acts and not the courts. * * * No suspicion or incrimination should follow the assertion of a constitutionally given right."

The judgment is reversed and the cause remanded for a new trial.

ELLISON, P. J., and LEEDY, J., concur.