383 P.2d 930

STATE of Utah, Plaintiff and Respondent,

v.

Mervil Edward BROWN, Defendant and Appellant.

No. 9779.

Supreme Court of Utah.

July 25, 1963.

Phil L. Hansen, Salt Lake City, for appellant.

A. Pratt Kesler, Atty. Gen., Ronald N. Boyce, Asst. Atty. Gen., Salt Lake City, for respondent.

WADE, Justice.

Defendant Brown appeals from a jury verdict judgment finding him guilty of raping Anita, a 16-year-old girl, on a Sunday morning at her home in Farmington, Utah. Anita and the attacker were not acquainted with each other prior to the attack. Brown's defense was an alibi that he was home with his wife at the time, and that he never had seen Anita until about 1:30 a. m., two days later, when Anita and her mother and father identified him at his home in Salt Lake City while he was standing with other men in the headlights of a car after the sheriff's office had found him from the family's description of the attacker and the car, which they saw at their home on the morning of the attack.

Anita lives with her parents about two blocks north of a Farmington church on the northeast corner of an intersecting street. That Sunday morning the parents had gone to Salt Lake City. While they were away Anita went to Sunday School at 10 o'clock a.m., but started to return home on account of eye pain at the end of the opening exercises between 10 and 11 a.m. At the intersection near her home, a new light blue Comet car was stopped for the stop sign, and the lone man driver asked her where George Thomas lived. The driver appeared not to understand her directions, and she got in his car to show him, but when they arrived at the place she designated he said that was not the place. Anita then suggested returning to her home to consult the telephone directory, which they did, and he parked his car south of the home. He followed her into the home and as they entered he locked the storm door without her noticing it.

After she failed to find the address in the telephone directory, he began asking her if she liked boys, made several attempts to kiss her, and as he attempted to grab her, she slipped her arms out of her coat sleeves and tried to run away but he caught her. He then threatened to kill her or to knock her out if she did not submit to intercourse. He struck her a number of times, causing a large bruise on her face the size of a dollar and a cut on the inside of her mouth, causing it to bleed. During the struggle he wrapped her coat around her and threw her onto the floor, then forced her into her

mother's bedroom onto the bed. There he tore part of her clothes off and with force and threats accomplished sexual intercourse.

This accomplished, he loosely tied her hands and pushed her into a closet, telling her to stay there until she slowly counted to 60 twice. As he left, he shouted to her to clean up the mess and tell no one what happened, threatening to return and get her if she told. When she came out of the closet his car was gone. She cleaned up the mess and put some levis on, then answered the doorbell which her mother had been ringing for some time.

With much crying Anita told her mother what had happened, except she described it as an attempt instead of admitting intercourse. She also mentioned his threats to return and get her if she told.

The mother and father had returned home while the Comet car was still parked south of their home. They noticed the kind of a car it was and the license number, which indicated to the father that it was not the car of a boy friend of Anita. They also saw the driver cross the front lawn, get into the car and drive away. After Anita told her mother, the mother went to the father in the back yard, and when she told him of the attack, he took a gun and his car and tried to follow the car which he had seen parked by their home, but failed to find it. The mother called the sheriff's office, and they arranged for a doctor to examine Anita. To avoid the danger of the attacker's return, Anita had a short visit with a girl friend and then was taken to the doctor, and before she arrived at the doctor's office for the examination, she told her mother that intercourse had actually been accomplished. The doctor recovered male semen from her vagina. He also verified the bruises on her face and mouth. From the description given by Anita and her parents of the Comet car, the license number, and the man, the sheriff's office located the defendant, and as above stated, he was identified as Anita's attacker.

Two questions require consideration: 1) Is there substantial evidence furnishing a reasonable basis for a finding that the defendant Brown was guilty beyond a reasonable doubt? 2) Was the comment of the district attorney that Brown's wife "is the one person who could have said defendant was at home" when the attack occurred "did not testify," prejudicial error? We consider the questions in the order above stated.

1) The jury's verdict is amply supported by substantial evidence. Defendant was identified by Anita, her father and mother as the man who was at their home that Sunday morning. Anita was with him for a long enough time to be able to recognize him when she saw him again. The identification was made while he stood in the headlights of a car with other men. Before he was apprehended, Anita and her

parents gave the police officers detailed descriptions of the Comet car, the license number, the driver of the car, including his size, build, clothing and other descriptions. Although as could be expected some details of these descriptions were slightly inaccurate, such as his height and his estimated age and part of the numbers of the car license, we think that these descriptions were sufficient to reasonably identify him beyond a reasonable doubt as the man who committed this attack.

Defendant's alibi is based almost entirely on his own testimony. He claims to have been home with his wife at the time that this attack occurred, but his wife did not testify. He produced four other witnesses whose testimony in some respects was inconsistent with some parts of the State's evidence with respect to him being at Anita's home when this assault occurred. Although these witnesses undoubtedly told the facts as they remembered them, after defendant refreshed their memories a week

after the assault occurred, they could have been mistaken as to the details which suggest inaccuracy in the State's case. So we conclude that the verdict was supported by substantial evidence which furnishes a reasonable basis for a finding of defendant's guilt beyond a reasonable doubt.[1]

2) The district attorney's comment to the jury, in substance, that the defendant's wife, the one person who could have testified that defendant was home at the time the assault occurred, did not testify, was prejudicial error. The defendant objected to the comment on the ground that the wife has a privilege not to testify against her husband.[2] The defendant claimed an alibi to the effect that at the time the State claimed he was assaulting Anita at her home in Farmington, he was with his wife in their home in Salt Lake City, but his wife, whom he claims was present with him at their home, did not testify.

Clearly, our Constitution and statutes give both the husband and the wife a privi-

---

1. State v. Ward, 10 Utah 2d 34, 347 P. 2d 865.
2. Under Art. I, Sec. 12, Utah Constitution, it is provided "a wife shall not be compelled to testify against her husband." Under Sec. 77–44–4, U.C.A.1953, it is provided "[n]either husband nor wife shall be a competent witness for or against the other in a criminal action or proceeding to which one or both are parties, without the consent of the other * * *." (Following this is enumerated exceptions to this rule not involved here.)
   Sec. 78–24–8, U.C.A.1953 provides: "(1) A husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent; nor can either during the marriage or afterwards be, without the consent of the other, examined as to any communication made by one to the other during the marriage; * * *." (Then exceptions are enumerated not involved here.) Under Sec. 77–44–5, U.C.A.1953, it is provided: "If a defendant offers himself as a witness, he may be cross-examined by the counsel for the state the same as any other witness. His neglect or refusal to be a witness shall not in any manner prejudice him or be used against him on the trial or proceedings."

lege that the wife shall not testify under these circumstances without the consent of both the husband and the wife. The cases are in hopeless confusion on whether, under somewhat similar circumstances and statutes, such comment on the failure to testify is prejudicial error.[3] If such comment is permissible, the privilege is largely destroyed. We conclude that this comment destroyed the privilege to not testify and was prejudicial.

Reversed with directions to grant a new trial.

HENRIOD, C. J., and McDONOUGH, CALLISTER and CROCKETT, JJ., concur.

3. Annotation—Comment on claim of privilege, 116 A.L.R. 1170–1176. For extensive discussion of this problem see

Wigmore on Evidence, Third Edition, Secs. 285–6, Secs. 2227–8, Secs. 2243–5, Secs. 2270–2.