STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
NATHANIEL WALKER, DEFENDANT-RESPONDENT.

Argued October 17, 1978—Decided June 7, 1979.

*Mr. Paul A. Massaro,* Assistant Prosecutor, argued the cause for appellant (*Mr. Joseph H. Stamler,* attorney).

*Mr. Alan Dexter Bowman,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General (*Mr. John J. Degnan,* Attorney General of New Jersey, attorney).

*Mr. Robert R. Blasi* argued the cause for respondent (*Messrs. Herrmann and Blasi,* attorneys).

The opinion of the court was delivered by

Sullivan, J. This appeal by the State, on certification granted by this Court, 75 *N. J.* 603 (1977), involves, primarily, the question of whether the prosecutor's summation comments to the jury concerning defendant's failure to call his wife as a witness in support of his alibi testimony was a violation of defendant's marital privilege under *Evid. R.* 23(2) not to have his spouse testify. Other issues raised by defendant on his appeal will also be considered.

The Appellate Division, in an unreported opinion, reversed defendant's conviction of kidnapping, rape and sodomy on

the ground that defendant had a privilege under *Evid. R.* 23(2) not to have his spouse testify and, he having exercised that privilege, the prosecution was prohibited by the express provisions of *Evid. R.* 39 from commenting · thereon and suggesting that an adverse inference could be drawn therefrom. The resultant prejudice to defendant, the Appellate Division held, required a reversal of defendant's conviction and a new trial. We disagree and reverse the Appellate Division ruling.

The State's proofs showed the following:

.On October 19, 1974, at about 12:15 A.M., the victim was accosted as she was returning to her apartment in Elizabeth after she had parked her car. Her assailant approached her from the rear, put his arm around her, pressed an unidentified hard object into her side and ordered her back into her car. He then made her drive to a housing project in Newark some 10 to 15 minutes away, forced her into the back of the car where he raped her, sodomized her and forced her to perform fellatio. She was then made to drive back to Elizabeth where the man got out of the car about a block and a half from her home. Her ordeal extended over a period of about two and one-half hours.

Defendant, who lived with his wife and child in the same area of Elizabeth as the victim, was not identified until almost four months later when the victim picked him out of a lineup at police headquarters. She also made a positive identification of him at trial.

Defendant testified in his own defense that on the night in question he had been at work at his regular place of employment on the 3:00 P.M. to 11:30 P.M. shift. He punched out on the time clock shortly after his shift ended, washed up and got a ride home from a co-worker. He estimated that he arrived home at about 12:15 to 12:20 A.M. where his wife, who was awake, had supper ready for him. He said that he did not go out of the house again that night and, after talking with his wife for a while, watched tele-

vision and then went to bed. During his testimony he identified his wife as being present in court.

Defendant's employment record showed that he had worked on the night in question until 11:30 P.M. His co-worker also testified that after work he drove defendant home, arriving there about 12:10 or 12:15 A.M. Since the criminal acts took place during the period of time defendant said he was at home with his wife, she was the only person who could vouch for the truth of his testimony. Nevertheless, defendant rested his case without calling her to the stand.

In his summation, the prosecutor referred to the fact that defendant's wife was present in the courtroom during the trial, and then said:

Is it not reasonable that she could be called upon by the defense to corroborate the so-called alibi? Why hasn't she taken the stand? And I submit that it's reasonable for you to infer that the non-production of the defendant's wife is due to the fact that if produced she would offer testimony adverse to what he said.

Defense counsel had objected to any reference to the non-production of defendant's wife as a witness. However, the trial judge ruled that under the circumstances it was proper for the State to comment on it.

The jury found defendant guilty of kidnapping, rape and sodomy. He was sentenced to life imprisonment for the kidnapping to be served consecutive to a prison sentence defendant was then serving. For rape, he was sentenced to 25 to 30 years in State Prison to be served consecutive to the sentence for kidnapping. For sodomy, defendant was sentenced to 18 to 20 years in State Prison to be served consecutive to the sentences for kidnapping and rape.

The pertinent Rules of Evidence are as follows:

*Evid. R.* 23. Privilege of accused

(2) The spouse of the accused in a criminal action shall not testify in such action except to prove the fact of marriage unless (a) such spouse and the accused shall both consent, or (b) the accused is charged with an offense against the spouse, a child of the accused

or of the spouse, or a child to whom the accused or the spouse stands in the place of a parent, or (c) such spouse is the complainant.

[*N. J. S. A.* 2A:84A–17]

*Evid. R.* 37. Waiver of privilege by contract or previous disclosure; limitations

A person waives his right or privilege to refuse to disclose or to prevent another from disclosing a specified matter if he * * * has * * * (b) without coercion and with knowledge of his right or privilege, made disclosure of any part of the privileged matter * * *.

[*N. J. S. A.* 2A:84A–29]

*Evid. R.* 39. Reference to exercise of privileges

* * * [I]f a privilege is exercised not to testify or to prevent another from testifying, either in the action or with respect to particular matters, or to refuse to disclose or to prevent another from disclosing any matter, the judge and counsel may not comment thereon, no presumption shall arise with respect to the exercise of the privilege, and the trier of the fact may not draw any adverse inference therefrom.

[*N. J. S. A.* 2A:84A–31]

As heretofore noted, the Appellate Division held that defendant had a privilege under *Evid. R.* 23(2) not to have his wife testify, and that he had exercised that privilege by not calling her as a witness. The prosecutor's comments on the failure to have the wife testify, the Appellate Division ruled, were proscribed by *Evid. R.* 39, constituted prejudicial error and required a reversal of defendant's convictions and a new trial.

The error in the Appellate Division holding lies in its determination that defendant had not waived the marital privilege. Ordinarily, of course, no comment by the prosecutor would be permissible regarding the failure of a defendant's spouse to testify at trial. *Evid. R.* 39. However, the marital privilege can be waived under *Evid. R.* 37.

Here defendant, although he had a privilege not to testify at all, took the stand to say that at the time the victim was being ravished in a parking area of a housing project in Newark, he was at home in Elizabeth with his wife whom he identified as being present in the courtroom during his testimony. The alibi presented obviously made

Mrs. Walker a crucial witness since she became the only person who could support his story. Also, defendant's identification of his wife as being present in the courtroom during his testimony, could not but help to convey the impression that by her presence in court she was supporting the veracity of his story.

Under these circumstances, defendant must be taken to have made a disclosure of the privileged matter (what his wife's testimony would be) within the meaning of *Evid. R.* 37 and thereby waived the right to assert the marital privilege, at least insofar as he was concerned.

Our previous decision in *State v. Lowery,* 49 *N. J.* 476 (1967) supports this conclusion. There we held that it was not plain error for a prosecutor to comment adversely on defendant's failure to call his wife as a witness in a situation where defense counsel, during the *voir dire* and during the trial, had stated that he intended to call the wife as a witness and suggested that her testimony would support defendant's story that the shooting was accidental.

In *Lowery* we recognized that it was not necessary for a husband or wife to go upon the stand and there affirmatively exercise the privilege not to testify, and that the decision of a husband not to call his wife as a witness was a sufficient exercise of the privilege. However, we held that where defendant gave every indication in the course of the trial that he intended to call Mrs. Lowery and then in his own summation sought to minimize possible adverse inferences from the failure to do so, he "invited" the prosecutor's comment which could not be regarded as prejudicial error under the circumstances. *Id.* at 486.

The rationale of *Lowery,* as well as our ruling herein, recognizes that the marital privilege under *Evid. R.* 23(2) is an absolute shield against compelled testimony by a spouse. However, where defendant for his own advantage makes his wife a crucial witness and by referring to her presence in court implies that she is supporting his alibi but does not call her to the stand, he cannot then use the

privilege as a tactical weapon of offense to silence the prosecutor. In such a case, defendant, at least as far as he is concerned, has waived the privilege and opened the door to prosecutorial comment on his failure to call his wife as a witness.

Defendant argues that the verdicts of his guilt were clearly against the weight of the evidence. The trial court denied a post-trial motion based on this ground and the contention is lacking in merit. Defendant was positively identified at trial by the victim. Thus, the issue was one for the jury.

Defendant also alleges that he did not receive adequate legal representation at trial because of the failure of his attorney to call Mrs. Walker as a witness. In an affidavit submitted to the Appellate Division, defendant stated that his wife was always available and willing to testify and that on at least two occasions he had asked his attorney to call her to support his alibi. According to defendant, the attorney's response was that sufficient alibi testimony had been presented and it was unnecessary to call the wife. However, there is nothing in the trial record to support this contention.

Defendant's *ex parte* affidavit, presented for the first time on appeal, was an improper way to raise his claim of inadequate legal representation at trial. See *Wallach v. Williams,* 52 *N. J.* 504, 505 (1968); *State v. Sidoti,* 120 *N. J. Super.* 208, 211 (App. Div. 1972). We decline to consider the point, without prejudice to defendant's right to seek post-conviction relief on that ground. See *State v. Rosen,* 110 *N. J. Super.* 216 (App. Div. 1969), aff'd *per curiam* 56 *N. J.* 89 (1970).

It is also contended that it was error to permit the victim to testify to an out-of-court identification she made of defendant at police headquarters. At the *voir dire* hearing as to the admissibility of such identification, defendant testified that he had objected to being placed in a lineup "without my lawyer." Defendant was in jail at the time, ostensibly for failure to pay a traffic fine imposed two months previously.

The police had reason to suspect that he might have been involved in a series of rapes which had taken place in defendant's neighborhood. Because of that, the victim in the present case was called to police headquarters to see if she could identify her attacker in a lineup which included defendant.

The trial court, on the *voir dire,* after hearing all of the testimony as to the lineup procedure and the victim's identification of defendant, found that no suggestive practices had been employed by the police and that in the totality of circumstances the identification was free of taint. The trial court noted that while defendant was a possible suspect, he had not been indicted or charged with crime at the time. The trial court understood defendant's objection to being placed in a lineup "without my lawyer" to mean, not that he had a lawyer, but rather that defendant "wanted a lawyer." Citing *Kirby v. Illinois,* 406 *U. S.* 682, 92 *S. Ct.* 1877, 32 *L. Ed.* 2d 411 (1972), the trial court ruled that defendant was not entitled to counsel at that preliminary stage before the commencement of a prosecution against him.

We are in substantial agreement with the trial court's ruling. An accused has a constitutional right to counsel at every critical stage of a criminal prosecution, formal or informal, in court or out. *United States v. Wade,* 388 *U. S.* 218, 87 *S. Ct.* 1926, 18 *L. Ed.* 2d 1149 (1967). However, the lineup here involved was part of a preliminary investigation while defendant was only a possible suspect, not yet identified by the victim and prior to the filing of criminal charges against him. Under these circumstances, the right to assigned counsel had not yet attached. See *Kirby v. Illinois, supra.*

Finally, we consider the contention that the sentences imposed on defendant were manifestly excessive. As heretofore noted, defendant was sentenced to life imprisonment for the kidnapping, to be served consecutive to a prison sentence he was then serving. For the rape he was sentenced to 25 to 30 years in State Prison to be served consecutive to

the kidnapping sentence. He was also sentenced to 18 to 20 years in State Prison for sodomy to be served consecutive to the sentences imposed for the kidnapping and rape. In all, defendant received sentences aggregating life imprisonment plus 43 to 50 years. We have the right to modify a sentence which is manifestly excessive. *State v. Leggeadrini,* 75 *N. J.* 150, 156 (1977). See *R.* 2:10-3. However, the trial court characterized defendant's acts as not only heinous, but as repulsive, brutal, violent and an animalistic satisfaction of defendant's base passion. He gave as reasons for the sentences, punishment of defendant, protection of society and deterrent to others. The record fully supports these comments. The sentences imposed, while severe, are not shown to be manifestly excessive.

The judgment of the Appellate Division is reversed and the judgment of conviction and sentences thereunder reinstated.

PASHMAN, J., dissenting. The majority today correctly holds that the marital privilege, *see Evid. R.* 23(2), generally precludes the prosecutor from commenting upon the failure of a criminal defendant to call his spouse to testify on his behalf. Nevertheless, it also rules that the defendant cannot avail himself of this doctrine because he "opened the door" to prosecutorial comment by utilizing an alibi defense. With respect to the latter holding, I agree with the Appellate Division that the facts of this case are not sufficient to support such a finding of waiver. I therefore respectfully dissent.

Under the majority's view, whenever a defendant advances a defense which makes the testimony of his or her spouse relevant, he must call that spouse as a witness or be deemed to have "invited" the prosecutor to comment upon the failure to do so. Practically speaking, defendant will therefore be pressured into having the spouse take the stand in order to

avoid any adverse inference.[1] In effect, the marital privilege is rendered devoid of any significance. *See, e.g., People v. Green,* 47 *Cal.* 2d 209, 302 *P.* 2d 307 (Sup. Ct. 1956); *People v. Wilkes,* 44 *Cal.* 2d 679, 284 *P.* 2d 481 (Sup. Ct. 1955); *State v. Wyatt,* 276 *S. W.* 2d 86 (Mo. Sup. Ct. 1955); *State v. Brown,* 14 *Utah* 2d 324, 383 *P.* 2d 930 (Sup. Ct. 1963).

The majority's effort to bring this case within the scope of *State v. Lowery,* 49 *N. J.* 476 (1967), is unconvincing. The facts of that case are not even remotely similar to those of the matter at bar.[2] In *Lowery,* defense counsel indicated on at least seven occasions that defendant's wife would be called and that she would produce evidence favorable to defendant. Moreover, during his summation, defense counsel specifically informed the jurors that the failure to produce the wife as a witness might legally " *'form some slight part of [their] consideration * * *,'" id.* at 485 (emphasis in original), thus conceding — albeit incorrectly — its relevance to the jury's decision-making process. Under such circumstances we were unable to conclude that the prosecutor's comment upon the matter constituted prejudicial error. *Id.* at 486.

This case is a far cry from *Lowery.* Here, defendant did not tell the jury that he intended to call his wife as a witness or indicate in any way what the content of her testimony would be. Neither did he impliedly admit that the failure to produce her was a proper subject for jury con-

---

[1]Moreover, it is not clear that defendant can always produce his spouse for testimony. The language of *Evid. R.* 23(2) appears to require the consent of both spouses before the marital privilege can be breached. Thus, it may be that defendant cannot compel an unwilling spouse to testify. *See People v. Wilkes,* 44 *Cal.* 2d 679, 284 *P.* 2d 481 (Sup. Ct. 1955) (interpreting similar statute as precluding compulsion of spouse). In such a case it would be clearly unfair to allow an adverse inference to be drawn by the jury.

[2]Indeed, the Attorney General himself concedes that *"Lowery* is factually inapposite for use as the touchstone for analysis of the instant case * * *."

siberation. Rather, he merely stated that at the time of the incident he was at home with his wife. Such facts are clearly insufficient to establish waiver. *See, e. g., People v. Green, supra; People v. Wilkes, supra; State v. Wyatt, supra; State v. Brown, supra.*

In an attempt to buttress its conclusion, the majority notes that defendant identified his wife as being present in the courtroom. Only by the wildest stretch of imagination, however, can this be understood as indicating the nature of her unproduced testimony. In any event, this information was elicited merely as part of defendant's general background — *e. g.*, address, marital status — and was not, contrary to the majority's implication, tied in with his alibi testimony. Thus, it adds nothing to the waiver analysis.

In my opinion the facts here demonstrated are wholly inadequate to support a holding that defendant waived the marital privilege. The concept of waiver, if it is to have any real meaning, must be made of sterner stuff. The rule as to marital privilege is clear — the prosecutor is precluded from commenting upon the failure of a criminal defendant to call his spouse to testify on his behalf.

Accordingly, I would affirm the Appellate Division and remand for a new trial.

Justice HANDLER joins in this opinion.

*For reversal*—Chief Justice HUGHES and Justices MOUNTAIN, SULLIVAN, CLIFFORD and SCHREIBER—5.

*For affirmance*—Justices PASHMAN and HANDLER—2.