400 So.2d 622 (1981)
STATE of Louisiana
v.
Lawrence E. DAY.
No. 80-KA-2766.
Supreme Court of Louisiana.
June 22, 1981.
*623 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Ralph L. Roy, Kay Kirkpatrick, Asst. Dist. Attys., for plaintiff-appellee.
Jack M. Dampf, Baton Rouge, for defendant-appellant.
EDWARDS, Justice Ad Hoc.[*]
Lawrence E. Day, convicted by a jury of aggravated burglary and sentenced to twenty-five years imprisonment at hard labor, appeals. We reverse and remand.
Defendant was charged by bill of information with the aggravated burglary of Patricia Cox' home. The record discloses that at about 1:45 A.M. on November 11, 1978, a masked man brandishing a gun broke into the home of Patricia and Van L. Cox in the Southdowns area of Baton Rouge. The masked gunman made Mr. Cox get under the bed, then forced Mrs. Cox to dress and undress six or seven times in various outfits. The intruder fondled Mrs. Cox' person, even as she attempted to quiet, by breast-feeding, her crying child who had awakened. Mrs. Cox was forced to perform fellatio on the intruder who left shortly after that. Both Mr. and Mrs. Cox subsequently identified defendant at a police line-up.
At trial and during the State's opening remarks, the prosecutor, Ralph Roy, announced that he would subpoena Mrs. Day as a witness for the State. Subsequently, with the jury retired, Mrs. Day stated "I don't want to testify against him." Nevertheless, the court ruled that Mrs. Day had to exercise her privilege[1] in front of the jury. Appellant specifies this as error.
State v. McMullan, 223 La. 629, 66 So.2d 574 (1953), held that it was not error for a trial court to require a witness claiming privilege to exercise same before the jury.
State v. Haynes, 291 So.2d 771 (La.1974), however, citing American Bar Association Standards for Criminal Justice, Prosecution Function 5.7,[2] disapproved of the practice sanctioned by McMullan.[3] It is noteworthy that the prosecutor in the present case, who was also the prosecutor in Haynes, intentionally chose to ignore the rule change initiated by this court in Haynes.
In State v. Berry, 324 So.2d 822 (1975), this Court stated at 830:
"It is improper conduct for either the prosecution or the defense knowingly to call a witness who will claim a privilege, for the purpose of impressing upon the jury the fact of the claim of privilege. American Bar Association Standards of Criminal Justice, Relating to the Prosecution *624 Function, Standard 5.7(c), and Relating to the Defense Function, Standard 7.6(c) (1971).
As the commentaries to these standards indicate, claims of privilege are preferably determined outside the presence of the jury, since undue weight may be given by a jury to the claim of privilege and due to the impossibility of cross-examination as to its assertion. (The commentaries also note the impropriety of either counsel arguing any inference from the failure of another to call a witness, if the failure to do so is known to be based on the witness's claim of privilege.) For similar reasons, the courts have uniformly rejected a defendant's claim of error based upon the denial of his request that a witness assert his claim of privilege before the jury."
Clearly, if a defendant may not force a witness of the State to exercise his privilege before the jury and if it is improper for the defendant to urge any inference in such a case,[4] these principles must also apply to the State.
We hold that when the State knows that a witness will exercise a valid privilege, it is reversible error to require the witness to exercise his privilege in front of the jury.
The State contends that "the prosecutor had no knowledge of the (wife's) intention to take the privilege." This argument, disingenuous at best, is torpedoed by a reading of page twenty-one of the trial transcript, at which point the prosecutor is expressly informed of Mrs. Day's intent to exercise her privilege. Manifestly, this case must be reversed.
At the conclusion of trial and during closing argument for the State, the prosecutor made numerous references to Mrs. Day's failure to testify.
After mentioning the (inappropriate in this case) presumption that evidence not produced would not have helped that party, the prosecutor urged the presumption as
"a tool that you should utilize in this case, with reference to the privilege that a wife has to the effect that she can not be compelled to testify against her husband. She may if she wishes, but she can not be compelled." T-168.
Later, referring to counsel for defendant's argument that the State had not produced the gun allegedly used in the burglary, the prosecutor said, referring to Mrs. Day,
"well, I'm going to call the only person I can call. You know, she showed it to him. She was living there in the house, you know, and I called her up here. And I want to tell you, I don't know where that gun is. And I want to tell you that so you know that I called the only person I could in that household, and she was forced to say she didn't want to testify, which is okay with me." T-175. (emphasis supplied)
Again, referring to the fact that Mrs. Day had, on one occasion, spoken to a police investigator,
"I had the woman here who he talked to and she refused to testify." T-175.
Finally, on rebuttal,
"I will refer you back to Mrs. Day and her crayfishing behind a privilege, if I may" T-191.
Defense counsel objected to comment on Mrs. Day's exercise of her privilege but the objection was overruled.
Initially, it must be noted that privileges are not constitutional rightsthey are either *625 based on common law or, as in the present case, statute.
LSA-C.Cr.P. Art. 771 provides the applicable law for allegedly improper remarks relating to the assertion of a privilege other than the right of a defendant not to testify in his own defense.
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.
In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial."
In the present case, no admonition was given since the trial court had overruled defense counsel's objection and obviously believed there was no prejudice to defendant.
In State v. Bennett, 357 So.2d 1136 (1978), this Court held that it was improper for a prosecutor to comment on the defendant's assertion of his privilege as to private conversations between husband and wife.[5]Bennett was not reversed, however, because 1) the trial court in that case had immediately admonished the jury that the wife was not competent to testify against her husband as to private interspousal communications and that the jury was not to speculate as to what the wife's testimony might have been had the defendant not asserted his privilege and 2) because the wife was not a significant witness and there was substantial evidence of the defendant's criminal activity.
The present case differs radically from Bennett. Mrs. Day was a most significant witness in that the prosecution strongly intimated that she knew the whereabouts of certain highly sought items of evidence. In addition, the prosecutor's repeated and pointed references to Mrs. Day's refusal to testify unquestionably impressed on the jurors the prosecution's belief that defendant's wife was hiding critical evidence.
A careful review of this case convinces us that the prosecutor's closing remarks, condoned by the trial court, unfairly prejudiced the jury against Day. The cumulative effect of forcing Mrs. Day to exercise her privilege before the jury and then criticizing her for it effectively denied defendant of his right to a fair trial. The State's contention to the contrary notwithstanding, we cannot say that the errors were harmless.
Prior to trial of this case, the State announced that, under the authority of LSA-R.S. 15:445 and 446,[6] evidence of other crimes would be introduced.
*626 Overruling written objection by defense counsel, the trial court permitted evidence of similar offenses against Laura Syling Simms, Jennifer Scholars Williams and Lisa Hodges to be introduced.
The reporters are filled with cases dealing with when evidence of other crimes is admissible. State v. Washington, 386 So.2d 1368 (La.1980); State v. Jackson, 367 So.2d 353 (La.1979); State v. Morris, 362 So.2d 1379 (La.1978); State v. Carter, 352 So.2d 607 (La.1977); State v. Gaines, 340 So.2d 1294 (La.1976); State v. Moore, 278 So.2d 781 (La.1973); State v. Prieur, 277 So.2d 126 (La.1973).
This Court, in State v. Jackson, supra, laid down guidelines for the introduction of such evidence.
"In order for evidence of similar acts committed by defendant to be admissible under La.R.S. 15:445 and 446, the other crimes must first be so distinctively similar as to preponderantly demonstrate that their perpetrator must be the same person. The proof of the other crime must be relevant to prove a fact of consequence to the accused's present innocence or guilt (independent of the inadmissible purpose to infer that the accused committed the present crime because he had committed the other one).
Finally, the probative value of the evidence of the other crime must outweigh any prejudicial effect." 367 So.2d at 354. (Footnote and citations omitted)
A close comparison of the four separate offenses as to which evidence was admitted discloses both general similarities and critical differences.
All four offenses involved a male intruder with a long-barrelled gun. All victims were instructed to model various articles of clothing. Lisa Hodges stated that the intruder had brownish-red eyes and didn't notice an accent, whereas Laura Simms and Jennifer Williams observed blue eyes and fair skin. Patricia Cox also observed fair skin. Laura Simms was required to model only one dress while Cox and Hodges were forced to put on several outfits. In Hodges' case, the intruder pulled various items of clothing from drawers. Significantly, only in the case of Patricia Cox was a sexual crime committed. Most significantly, in the cases of Cox and Simms, the intruder wore only a pillowcase mask with holes cut for eyes, whereas in the cases of Hodges and Williams, the intruder wore a gorilla mask.
The admission of evidence of other crimes in which a gorilla mask was used was extremely prejudicial to Day. Numerous offenses involving the use of a gorilla mask had occurred in the Southdowns area of Baton Rouge prior to the offense against Patricia Cox. Public knowledge of those attacks was widespread.
In brief, the State claims:
"The crime for which appellant was convicted was just one of many of the same nature committed by Day, earning himself the name `Gorilla Man'. The name was based upon Day's using a gorilla mask, among other things, to conceal his identity."
If the State had wanted to try defendant for one of the "gorilla man" offenses, it was, and is, free to do so. The State may not, however, charge defendant with a non-gorilla man offense (the only offense in which a sex crime was committed against the person of the victim) and then bring in evidence of other offenses in which a gorilla mask was used. Such evidence fails to meet the test of State v. Jackson, supra, in that the other crimes (with the gorilla mask) are not so distinctively similar to the crime charged as to preponderantly demonstrate that their perpetrator must be the same person.
The prosecutor referred to the "gorilla man" offenses during opening argument. He produced three witnesses who had seen Mrs. Day wear such a mask on Halloween night of 1978. He questioned Benton Odom of the Baton Rouge Police Department about Odom's investigation of the "gorilla man" case. Finally, in closing argument, he stated
*627 "the crime is designed, in this case with a gorilla mask or other masks of different kinds of fashions, ..... the gun is hidden, just like that gorilla mask .... I told the officer, I said, did you, on the 11th of November, did you talk to Mrs. Day about a gorilla mask .... That officer couldn't get up here and tell you what Mrs. Day told him on November the 15th about a gorilla mask, but I had the woman here who he talked to and she refused to testify .... I don't know what the big deal about a gorilla mask is. I mean, I might have one at home. I don't know.... I know they had a gorilla mask out there. I don't know what happened to it.... I do not have the mask .... a masked man, sometimes with a loose cloth, two or three times a gorilla mask.... it's no wonder we didn't find the mask."
It is clear beyond doubt that the prosecutor, unchecked by the trial judge, deliberately and improperly tried Day as the infamous "gorilla man."
Not only was the evidence of other crimes manifestly insufficient to create a "signature offense" but, due to the widespread publicity and sexual nature of the "gorilla man" crimes, said evidence hopelessly prejudiced the jury against Day.
For the foregoing reasons, the judgment appealed from is annulled and reversed. The case is remanded to the district court for further proceedings not inconsistent with law and this opinion.
REVERSED AND REMANDED.
MARCUS, J., concurs and assigns reasons.
MARCUS, Justice (concurring).
I concur, being of the opinion that when, as here, the prosecutor exploits a competent witness' exercise of a valid privilege in the presence of the jury, reversible error occurs.
NOTES
[*] Judges Lottinger, Edwards and Ponder of the Court of Appeal, First Circuit, participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Watson.
[1] LSA-R.S. 15:461 provides:

"The competent witness in any criminal proceeding, in court or before a person having authority to receive evidence, shall be a person of proper understanding, but;
(1) Private conversations between husband and wife shall be privileged.
(2) Neither husband nor wife shall be compelled to be a witness on any trial upon an indictment, complaint or other criminal proceeding, against the other.
(3) In the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes or offenses, a person so charged shall, at his own request, but not otherwise, be deemed a competent witness."
[2] Prosecution Standard 5.7 provides:

"A prosecutor should not call a witness who he knows will claim a valid privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of privilege. In some instances, as defined in the Code of Professional Responsibility, doing so will constitute unprofessional conduct."
[3] 291 So.2d 771 at 773, especially footnote 2.
[4] The trial judge, in a post-oral argument per curiam letter to this Court, explained that to avoid any inference that Mrs. Day's testimony would not have helped the State, it was necessary that the State call Mrs. Day as a witness. We first observe that while LSA-R.S. 15:432, which provides in part

"evidence under the control of a party and not produced by him was not produced because it would not have aided him,"
creates a negative presumption, that presumption should not ordinarily be relied on as the decisive factor in a case, especially when there is positive evidence. Secondly, it is evident that the presumption should not attach at all where the failure to call a witness is based on the witness' claim of privilege. State v. Berry, supra. See also Bisno v. United States, 299 F.2d 711, 723 (9th Cir. 1961).
[5] Our conclusion that it is error for counsel to comment on the exercise of a valid privilege is buttressed by the following cases: United States v. Pariente, 558 F.2d 1186 (5th Cir. 1977); Courtney v. United States, 390 F.2d 521 (9th Cir. 1968), cert. den. 393 U.S. 857, 89 S.Ct. 98, 21 L.Ed.2d 126, reh. den. 393 U.S. 992, 89 S.Ct. 440, 21 L.Ed.2d 457; State v. Levy, 160 N.W.2d 460 (Iowa 1968); State v. Brown, 14 Utah 2d 324, 383 P.2d 930 (1963). See also 32 ALR3d 906; 14 La. L.R. 427 (1954).
[6] LSA-R.S. 15:445 provides:

"In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction."
LSA-R.S. 15:446 provides:
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."