962 So.2d 1111 (2007)
STATE of Louisiana, Appellee,
v.
Woodson McGUFFIE, Appellant.
No. 42,069-KA.
Court of Appeal of Louisiana, Second Circuit.
August 1, 2007.
Rehearing Denied September 13, 2007.
*1113 Charles D. Jones, New Orleans, for Appellant.
Jerry L. Jones, District Attorney, George D. Ross, Assistant District Attorney, for Appellee.
Before BROWN, GASKINS and CARAWAY, JJ.
CARAWAY, J.
A jury convicted Woodson McGuffie of one count of malfeasance in office relating to his position as assistant parish administrator for the Ouachita Parish Police Jury. For the conviction, McGuffie received a sentence of five years at hard labor with the first three years to be served without benefit of suspension of sentence. Upon completion of the first three years at hard labor, the remaining portion of the sentence was to be suspended and McGuffie placed on supervised probation for three years, consecutive to the period of incarceration. The court ordered restitution to the Ouachita Parish Police Jury in the amount of $553.09 as well as restitution to the Ouachita Parish Sheriff's Office in the amount of $421.31. The court also ordered McGuffie to pay a fine of $3,500.00. We affirm the conviction, vacate the sentence and remand for resentencing.

Facts
Woodson McGuffie's malfeasance in office resulted from his use of a Ouachita Parish employee, vehicle and equipment for tree trimming work on his private property in December 2000. At the time, he was the assistant parish administrator for the Ouachita Parish Police Jury. During an interview with Earl Stone, a former employee of the Ouachita Parish Public Works Department, on an unrelated matter, sheriff's deputies received information that Stone had performed tree cutting services on McGuffie's Union Parish property. At the time of the incident, Stone's department was headed by Bo Boyte. Stone indicated that Boyte initially called him into his office and told him that McGuffie needed tree work done at his home. Stone also claimed that he and Boyte initially called McGuffie by phone and that Stone then went to McGuffie's office where he obtained directions to McGuffie's home. Concerning that meeting with McDuffie, *1114 Stone admitted that McGuffie had not asked him to come to his house in a public works truck, to bring any equipment or to cut any trees. Stone stated that he traveled to McGuffie's property to assess the work needed to be performed before he actually did the work. He traveled to the location in a public works vehicle and performed the work on December 18, 2000, with public works equipment.
Stone testified that he and his grandfather arrived at McGuffie's property at about 8:00 a.m., talked to McGuffie and departed at 3:00 in the afternoon. He admitted that although McGuffie offered to pay him for the work, he refused because Boyte told him not to accept any money for the work. He denied that his grandfather accepted any money from McGuffie.
At trial, Boyte testified that McGuffie was second in command to the parish administrator and that McGuffie had authority to instruct him to perform certain work. Boyte testified that he received a phone call from McGuffie who asked him if the public works department still had chain saw trimmers on poles. McGuffie also inquired as to whether "the man that cut the trees," referring to Stone, was still working for the department. McGuffie told Boyte that he had trees on his property that were in danger of falling on his power lines and asked Boyte if he could arrange for Stone to cut the trees. Boyte admitted that he instructed Stone to make contact with McGuffie and be prepared to go to his house on the following day, a Saturday. Boyte instructed Stone as to what public works vehicle to take and to utilize any public works equipment he might need. The work was done the following day. Boyte acknowledged instructing Stone on how to fill out the work order so as to reflect ten hours of work for which Stone was paid overtime. Boyte admitted he told McGuffie he would cover the work through the public works department.
At trial, McGuffie admitted that he had approached Boyte but claimed that it was merely to inquire about the name of a certain piece of trimming equipment so that he could go and buy it to trim his trees. McGuffie claimed that neither Boyte nor Stone worked under his authority. He also denied asking anyone to be sent to his property in a Ouachita Parish truck or to bring parish equipment to the property to cut his trees. McGuffie and his wife claimed that Stone and his grandfather showed up on their property when McGuffie was not home. The McGuffies claimed that it was not until the men were "almost through" that McGuffie drove up. He inquired of Stone as to why he was on his property and Stone informed McGuffie that Boyte sent him there. McGuffie then allegedly asked his wife for $40 to pay the men for their trimming work. McGuffie claimed that Stone's grandfather took the money. McGuffie admitted that he did not ask the men to leave and that he knew that police jury employees were not allowed to utilize police jury property to work on private property. McGuffie also claimed that he also paid Stone an additional $100 to cut down another tree.
Based upon these facts, McGuffie was charged by grand jury indictment with one count of malfeasance in office in violation of La. R.S. 14:134. A jury convicted him as charged and the trial court imposed the maximum five-year sentence, two of which were suspended, and a $3,500 fine. Although McGuffie did not seek a new trial nor reconsideration of his sentence, he ultimately lodged this appeal of his conviction and sentence.

Discussion
In his first assigned error, McGuffie complains that the trial court erred in not allowing him to exercise all of his available peremptory challenges during jury selection. In particular, McGuffie *1115 contends that his defense counsel had two remaining peremptory challenges which the trial court failed to allow him for challenging jurors before the jury was sworn. In support of his claim, McGuffie cites the provisions of La.C.Cr.P. art. 799.1 which refers to the practice of strike backs and reads as follows:[1]
Notwithstanding any other provision of law to the contrary, and specifically notwithstanding the provisions of Article 788, in the jury selection process, the state and the defendant may exercise all peremptory challenges available to each side, respectively, prior to the full complement of jurors being seated and before being sworn in by the court, and the state or the defendant may exercise any remaining peremptory challenge to one or more of the jurors previously accepted. No juror shall be sworn in until both parties agree on the jury composition or have exercised all challenges available to them, unless otherwise agreed to by the parties.
A review of the record shows that McGuffie made no contemporaneous objection relating to his counsel's use of strike backs. The only mention of such a practice was made by the trial court who reminded the attorneys that mutual peremptory challenges counted against each side and that "strike backs" would be allowed "unless we get our six in the first round, then that's it." No objection to that statement occurred. Nor is there any evidence of counsel's request to utilize strike backs prior to the time the jury was sworn in. Any irregularity or error cannot be availed of after the verdict unless it was objected to at the time of the occurrence. La. C.Cr.P. art. 841; State v. Smith, 39,698 (La.App.2d Cir.6/29/05), 907 So.2d 192. Accordingly, McGuffie is precluded from now raising this issue on appeal.
McGuffie next complains that the trial court erred in allowing testimony of a police officer regarding taped interviews of McGuffie when the tapes, transcribed notes and investigating officer's notes were lost, thereby denying him pre-trial discovery, the right to adequately prepare for cross-examination and his right to confrontation.
The record shows that immediately prior to the beginning of trial, as the attorneys discussed pre-trial discovery compliance, counsel for McGuffie noted for the record that the state had informed him in discovery that certain tape recordings and the transcript of an interview of McGuffie by Deputy Richard Medaries had been lost and were unavailable. The prosecutor explained that a sheriff's employee had cleaned out tapes and possibly erased a number of existing tapes from more than one case. The court inquired of Deputy Medaries as to his knowledge of the alleged erasure. The deputy had no independent knowledge of what happened to the tapes. The court then proceeded with trial.
Prior to Deputy Medaries' testimony, McGuffie's counsel revisited the matter and orally urged a motion in limine outside the presence of the jury arguing that the deputy should not be allowed to testify as to McGuffie's statements due to the missing tapes and transcripts. Defense counsel informed the court that the state had given him notice of the missing tapes by way of letter on February 13, 2006, eight days before trial, and acted in good faith concerning the error. Counsel also stipulated that McGuffie's statement was freely and voluntarily given and conceded that he did *1116 not know the content of the statement. He ultimately argued that the prejudicial effect of the missing tape outweighed the probative value of the information and the testimony of the statements should be excluded.
Prior to ruling, the court reviewed the procedural history of the case and noted that discovery was propounded to the state on February 6, 2004. The state issued a formal response to discovery on April 4, 2005, which included the offense report which contained a narrative of the statement given by McGuffie. The court read the report verbatim into the record. The court also took notice of the state's letter to McGuffie's counsel of February 13, 2006, informing counsel that the tapes were lost and had not been transcribed. Considering this evidence and related jurisprudence, the court denied McGuffie's motion in limine and allowed the testimony of Deputy Medaries regarding the contents of McGuffie's statements. McGuffie's counsel lodged an objection to the ruling. At the time of Medaries' testimony relating to the statement, the jury was again removed from the courtroom and the parties formally stipulated to the free and voluntary nature of McGuffie's statement although McGuffie's counsel declined to stipulate to the accuracy of the deputy's testimony regarding the statement. Counsel conceded to the court that any statement against interest made by McGuffie to Deputy Medaries would be admissible as evidence.
Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford. La. R.S. 15:450. This statute embodies a rule of fairness observed in American jurisdictions. The principle derives from the common-law rule of completeness which provides that when one party introduces a part of a writing or recorded statement, an adverse party may require the introduction of any other part of the statement which ought to in fairness be considered contemporaneously with it. State v. Duke, 97-3059 (La.10/30/98), 724 So.2d 730. This principle secures the tribunal's complete understanding of the total tenor and effect of the statement and guards against the danger that an out-of-context statement may create such prejudice that is impossible to repair by a subsequent presentation of additional material. Id. The fact that the purported statement of the accused as testified to by the investigating officer does not consist of a verbatim recitation of the conversation between them, due to the witness' inability to recall or other valid explanation, does not violate the rights of an accused under La. R.S. 15:450. State v. Marmillion, 339 So.2d 788 (La.1976); State v. Peterson, 619 So.2d 786 (La.App. 4th Cir.1993); State v. Arnold, 466 So.2d 520 (La.App. 3d Cir.1985), writ denied, 470 So.2d 124 (La.1985). The law does not require the production of nonexistent portions of a confession or portions which cannot be recalled. Id.
The admissibility of a relevant videotape is well settled as being largely within the discretion of the trial judge. State v. Johnson, 30,078 (La.App.2d Cir.12/10/97), 704 So.2d 1269, writ denied, 98-0382 (La.6/26/98), 719 So.2d 1054. While La. C.E. art. 1002 requires the original document to prove the contents thereof, under La. C.E. art. 1004(1), the original of a writing, recording or photograph is not always required to prove its contents, and other evidence of the contents of a writing, recording, or photograph is admissible if all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith. The "best evidence" rule is to be applied sensibly and *1117 with reason. State v. Gaskin, 412 So.2d 1007 (La.1982).
Moreover, absent a showing of prejudice, a conviction will not be overturned on the ground that the best evidence was not produced. Id. It has been held that the testimony of one who hears a confession is always best evidence of it. People v. Vaughn, 155 Cal.App.2d 596, 318 P.2d 148 (1957). Likewise, testimony by participants of what was said in a conversation have been held as equally admissible as a tape of the conversation to establish what was said. United States v. Gonzales-Benitez, 537 F.2d 1051 (9th Cir. 1976), cert. denied, 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291 (1976); United States v. Rose, 590 F.2d 232 (7th Cir.1978), cert. denied, 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979). Louisiana courts have allowed officers to testify in the place of playing taped video or audio recordings of confessions to the jury. See State v. Gaskin, supra, which sanctioned an officer's testimony from a transcribed copy of a defendant's confession in lieu of the taped confession which included referenced to a third person. See also State v. Williams, 32,993 (La.App.2d Cir.3/1/00), 754 So.2d 418, which denied an ineffective assistance of counsel claim based upon counsel's failure to object to an officer's testimony concerning a tape-recorded statement of the defendant where the tape was inaudible; and State v. Johnson, supra, which found admissible the testimony of two police officers and defendant's parole officer as to the inculpatory content of a video tape which had been erased prior to trial where no bad faith had been demonstrated.
In this case, counsel for McGuffie conceded at trial that the state complied with discovery and disclosed the missing tapes prior to trial. Indeed, the trial court placed upon the record the contents of the alleged statement made by McGuffie which had been provided to the defense by the state in pre-trial discovery. Thus, any complaint as to the denial of pre-trial discovery or the right to adequately prepare for cross-examination is without merit.
We also find no merit to McGuffie's claim that he was denied his right to confrontation because of his inability to cross-examine Deputy Medaries regarding the full content and context of the taped confession. McGuffie conceded that the state was not in bad faith regarding the loss of the tape or the lack of transcription of its contents. As a result of these circumstances, Deputy Medaries was required to testify as to his recollection of the contents of McGuffie's statement. The jurisprudence supports the introduction of this testimony in lieu of the tape when there are no allegations of bad faith. Moreover, Deputy Medaries' testimony constitutes the entirety of McGuffie's confession and presents no violation of La. R.S. 15:450. State v. Marmillion, supra. The fact that the tape may have been more reliable than Deputy Medaries' testimony goes to the weight, rather than admissibility of the evidence. McGuffie's counsel was given the opportunity to cross-examine the deputy as to the contents of the statement. Likewise, McGuffie took the stand in his own defense and could supply any exculpatory statements made during his prior statements to Deputy Medaries. In these circumstances, no violation of La. R.S. 15:450 or McGuffie's right to confrontation occurred.
In McGuffie's next assignment of error, he argues that the trial court erred in allowing the testimony of Boyte because the state did not disclose his immunity to the defense. We find no merit to this argument as the record discloses that the state disclosed Boyte's immunity grant given in exchange for his testimony in its discovery response to McGuffie. Further, *1118 although the state disclosed in discovery that Boyte had violated the terms of immunity and would not be used as a witness, McGuffie lodged no objection to Boyte's testimony at trial. By being placed on notice of Boyte's immunity agreement and failing to object to his testimony at trial, McGuffie has failed to preserve this assignment of error for appeal. La.C.Cr.P. art. 841.
Finally, as a first offender, McGuffie presents an excessive sentence claim on appeal. Because McGuffie failed to file a motion to reconsider sentence, he is limited on appeal to a bare claim that the sentence is unconstitutionally excessive. State v. Mims, 619 So.2d 1059 (La.1993). We find merit to this claim.
The crime of malfeasance in office is defined in La. R.S. 14:134, in pertinent part, as follows:
Malfeasance in office is committed when any public officer or public employee shall:
(1) Intentionally refuse or fail to perform any duty lawfully required of him, as such officer or employee; or
(2) Intentionally perform any such duty in an unlawful manner; or
(3) Knowingly permit any other public officer or public employee, under his authority, to intentionally refuse or fail to perform any duty lawfully required of him, or to perform any such duty in an unlawful manner.
* * *
Whoever commits the crime of malfeasance in office shall be imprisoned for not more than five years with or without hard labor and shall be fined not more than five thousand dollars or both.
A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in the light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992). As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Robinson, 36,147 (La.App.2d Cir.12/11/02), 833 So.2d 1207; State v. Adger, 35,111 (La.App.2d Cir.9/26/01), 797 So.2d 146.
The crime of malfeasance in office is intended to protect the public by deterring elected officials and governmental employees alike from the abuse of public office and duties. The present malfeasance was not committed by an elected public official whose duties and power in office were great. It was committed by a public employee who, relatively speaking, with regard to the other employees involved, did not possess great power to abusively wield. McDuffie could be expected to lose his employment immediately for the misuse of public resources. McDuffie did in fact lose his job. The results of the crime inherently impose public humiliation on this offender. There is no indication in the evidence that McGuffie exhibited any prior pattern of misusing public resources. This offense also involved another employee's, Boyte's, control and actions.
McDuffie is a 58 year-old first time offender with no criminal record in any regard. The pre-sentence investigation report contained documentation concerning his serious medical condition, noting that the costs of medication alone during his incarceration will be approximately $3,000 per month. The probation and parole officer's conclusions correctly indicate that incarceration will involve "astronomical" *1119 expense so as to not serve the public interest.
While the jury correctly found that McGuffie acted to his gain and committed the crime by not stopping the work at his residence, the facts regarding the directives for the work before commencement of the job were in much dispute. This single instance of abuse under these circumstances is far from the most egregious act of malfeasance or abuse of public position so as to justify this near maximum sentence. The record established that both Stone's wages for his work on defendant's property and the actual out-of-pocket expenses to the parish for use of the public equipment amounted to less than $300. The crime of theft of less than $300, a misdemeanor, carries a maximum sentence of not more than six months. La. R.S. 14:67(B)(3).
La.C.Cr.P. art. 881.4(A) mandates that an appellate court remand for resentencing if it determines that a sentence must be set aside on any ground. Because we conclude that the imposed sentence is constitutionally excessive, we vacate McGuffie's sentence and remand for resentencing in accordance with this opinion. While not recommending a jail sentence, the maximum sentencing range we could affirm for McGuffie's conviction may extend up to one year without hard labor with an imposed fine of no more than $3,500. Restitution is appropriate as a condition of probation. La.C.Cr.P. art. 895.1.

Conclusion
For the reasons stated above, we affirm McGuffie's conviction. The imposed sentence is vacated, and the case is remanded to the trial court for resentencing in accordance with the opinion expressed herein.
CONVICTION AFFIRMED. SENTENCE VACATED AND CASE REMANDED FOR RESENTENCING.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, STEWART, GASKINS and CARAWAY, JJ.
Rehearing denied.
NOTES
[1] Notably, the provisions of La.C.Cr.P. art. 799.1 were not enacted until 2006, after the date of McGuffie's trial.