# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 12-76

STATE OF LOUISIANA

VERSUS

MARQULE CRAFT

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 07-232799
HONORABLE CHARLES LEE PORTER, DISTRICT JUDGE

**********

## SHANNON J. GREMILLION
## JUDGE

**********

Court composed of Chief Judge Ulysses Gene Thibodeaux, J. David Painter, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

Thibodeaux, Chief Judge, concurs in part and dissents in part and assigns written reasons.

**Honorable J. Phillip Haney, District Attorney**
**Sixteenth Judicial Court**
**Angela B. Odinet, Assistant District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Beth S. Fontenot**
**Louisiana Appellate Project**
**P. O. Box 3183**
**Lake Charles, LA 70602**
**(337) 491-3864**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Marqule Craft**

**Marqule Craft**
**Riverbend Detention Center**
**9450 Highway 65 South**
**Lake Providence, LA 71254**
**PRO SE**
      **Marqule Craft**

**Marqule Craft**
**Riverbend Detention Center**
**9450 Highway 65 South**
**Lake Providence, LA 71254**
**PRO SE**
      **Marqule Craft**

**GREMILLION, Judge.**

Defendant, Marqule Craft, was charged by bill of information with possession of more than sixty, but less than two thousand, pounds of marijuana in violation of La.R.S. 40:966(F)(1) and La.R.S. 14:27. A jury convicted him of those offenses. Defendant was sentenced to serve seven years at hard labor. He now appeals his conviction and sentence. We affirm.

## FACTS

Deputy Jacques Leblanc of the St. Martin Parish Sheriff's Office conducted a traffic stop on Interstate 10 at mile marker 114 on March 13, 2007, at around 1:48 p.m, when he observed a vehicle traveling in the left lane at approximately sixty miles per hour in a posted seventy mile-per-hour speed zone. The deputy observed numerous vehicles trying to pass the vehicle, and the stop was based on the driver impeding the flow of traffic.

Defendant, the driver and sole occupant of the vehicle, could not produce a driver's license. Deputy Leblanc asked him if he was driving under suspension, and Defendant replied in the affirmative. Defendant understood the reason for the stop, and he stated he was in a rented vehicle. When Deputy Leblanc followed Defendant to the vehicle to peruse the rental paperwork, he immediately smelled a strong odor of marijuana coming from the passenger side.

The rental paperwork indicated that the vehicle was overdue for return, could only be operated in Texas, was rented by Geovonie Diez, and no additional drivers were allowed. Deputy Leblanc confirmed the suspension of Defendant's license via computer, and he requested backup because of the numerous criminal indicators. Deputy Leblanc described Defendant as overly nervous, with shaking hands and heavy breathing.

1

Deputy Leblanc explained the consent to search form to Defendant, who indicated he understood it and could read and write English. Defendant and Deputy Leblanc signed the form.

The search revealed a black duffle bag, a green duffle bag, and a black suitcase in the trunk. The black bag contained numerous grey duct-taped packages that Deputy Leblanc believed to be marijuana. Deputy Leblanc advised Defendant he would be placed under arrest, and Defendant put his hands behind his back. Deputy Leblanc then read Defendant his *Miranda* rights from a card in his pocket. Defendant indicated that he understood his rights and said he would like to cooperate.

Under cross-examination at trial, Deputy Leblanc testified that he did not have Defendant read the *Miranda* rights back to him, and he did not ask Defendant if he could hear him. Based on what Defendant said and his body language, Deputy Leblanc determined Defendant "appeared to be an every day person," not under the influence of alcohol. Defendant never indicated he could not hear or did not understand his *Miranda* rights.

Defendant told Deputy Leblanc and his partner, Deputy Darryl Vernon, the bundles were marijuana belonging to his brother. He said he worked for his brother, and he purchased the marijuana with school tuition money. Defendant said he was transporting the marijuana for his brother. The deputies took Defendant to the St. Martin Parish Sheriff's Office.

At the Sheriff's Office, Defendant signed a "Your Rights" form after Deputy Leblanc read it to him. This form acknowledged his *Miranda* rights and included a waiver of those rights.

2

Agent Chad Hazelwood, task force agent for the Drug Enforcement Administration of the Department of Justice, was called to help in this investigation. When he arrived at the Sheriff's Office, he was told Deputy Leblanc had already read Defendant his *Miranda* rights. Agent Hazelwood understood Defendant had already given a confession.

Defendant told Agent Hazelwood and Agent Jerry Stutes that "he was basically a mule . . . trafficking a load of [m]arijuana for a guy he identified as Geovonie," who was traveling in front of him when he was stopped. Defendant understood what he was doing and voluntarily gave the information. Agent Hazelwood did not know how long Defendant had been in the secured room where he interviewed him, and he did not know if Defendant had been given anything to eat or allowed to use the restroom. Defendant was awake, sober, and fully coherent throughout the interview.

Defendant presented no witnesses on the motion to suppress. The trial court determined:

> [Defendant's] statement was made freely and voluntarily and without coercion, and with the full understanding of his rights to remain to [sic] silent, and the defendant waived his rights [sic] to remain silent and gave a statement to the police that was made freely and without duress, and the statement is admissible in the trial of the defendant.

Deputy Leblanc repeated his testimony to the jury. He told the jury that Defendant signed the consent to search form and gave verbal permission for the search of the vehicle, that he placed Defendant under arrest, that he read Defendant his *Miranda* rights, and that Defendant stated he understood his rights. Defendant told Deputy Leblanc the duffle bags contained approximately one hundred pounds of marijuana. Defendant signed the rights form and waiver of rights at the Sheriff's Office and again indicated he understood those rights.

3

**ASSIGNMENT OF ERROR NUMBER ONE**

Defendant argues the trial court erred in admitting statements he made to police and that the State failed to prove his statements were freely and voluntarily made with a clear understanding of his *Miranda* rights. He states that "it is doubtful" he was able to adequately hear the reading of his rights and understand them while standing next to interstate highway traffic. Further, he argues that the State failed to show his valid waiver of *Miranda* rights regarding the statements he made after arrival at the Sheriff's Office.

> It is well-settled the ruling in *Miranda v. Arizona,* [384 U.S. 436, 86 S.Ct. 1602 (1966)] "protects an individual's Fifth Amendment privilege during incommunicado interrogation in a police-controlled atmosphere." *State v. Leger,* 05–0011, p. 13 (La.7/10/06), 936 So.2d 108, 124, citing *State v. Taylor,* 01–1638, p. 6 (La.1/14/03), 838 So.2d 729, 739. In *Miranda,* the Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.,* 384 U.S. at 444, 86 S.Ct. at 1602. Thus, before a confession or inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his *Miranda* rights, that he voluntarily and intelligently waived those rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises. La.Code Crim. Proc. art. 703(D); La. R.S. 15:451; [*State v.*] *Lee,* 05–2098 [p. 15 (La. 1/16/08), 976 So.2d 109,] 122. The admissibility of a confession is a question for the trial court. *Id.* As with the testimony relative to the physical evidence, the trial court's conclusions on the credibility and weight of the testimony relating to the voluntary nature of the defendant's confession are accorded great weight and will not be disturbed unless they are not supported by the evidence. *State v. Benoit,* 440 So.2d 129, 131 (La.1983). Whether or not a showing of voluntariness has been made is analyzed on a case-by-case basis with regard to the facts and circumstances of each situation. *Id.*

*State v. Hunt*, 09-1589, pp. 11-12 (La. 12/1/09), 25 So.3d 746, 754-55.

Louisiana Code of Criminal Procedure Article 703(G) requires the State "to introduce evidence concerning the circumstances surrounding the making of the confession or statement for the purpose of enabling the jury to determine the

weight to be given the confession or statement." The article also allows a defendant to introduce the same evidence.

While the noise level standing next to an interstate highway is undoubtedly significant, nothing in the record suggests it prevented Defendant from understanding or voluntarily waiving his rights. Defendant told Deputy Leblanc he could read and write English. Defendant signed the consent to search form. He told Deputy Leblanc he understood each of his *Miranda* rights and said he would like to cooperate. No evidence was presented, either during consideration of the motion to suppress or at trial, to show traffic noise or anything else prevented Defendant from understanding his rights and/or knowingly and voluntarily waiving them.

The State showed that Defendant was presented with his *Miranda* rights in written form at the Sheriff's Office. He signed the form in two places, first indicating that he understood his rights and then indicating that he waived them. He was placed in a room where Agent Hazelwood questioned him after being told Deputy Leblanc had read Defendant his rights.

The State met its burden to "affirmatively show that the confession or statement was freely and voluntarily given and was not made under the influence of fear, duress, menaces, threats, inducements or promises." *State v. Bordelon*, 597 So.2d 147, 149 (La.App. 3 Cir.), *writ denied,* 600 So.2d 678 (La. 1992). The record contains no indication of the length of time that passed between Defendant's signing the waiver of his rights and his questioning by Agent Hazelwood. Defendant presented no evidence at trial to support his argument on appeal that such a lengthy time passed that a new advisement of his rights was necessary. The State showed Defendant was properly advised of and waived his

5

rights, and Defendant presented no evidence to refute the waiver of his rights. Nothing at the hearing or at trial suggests Defendant was held in the room for an inordinate time or under circumstances of duress. This assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

Defendant contends the failure to preserve the DVD recording of the traffic stop and his statement to Agent Hazelwood prevented him from fully confronting the evidence used against him. Deputy Leblanc's vehicle had an audio/video camera that recorded onto a hard drive and a disc. After seventy-two hours, the hard drive automatically erased the information. Deputy Leblanc believed the camera was recording onto the disc at the time of the stop, and he intended to videotape the stop as he normally did. However, shortly before trial, he learned that the equipment did not function properly and did not record. Deputy Leblanc testified that the video would have shown the circumstances to which he testified had it worked properly. The purportedly blank video was introduced into evidence. Although an attempt was made to play it to the jury, the court reporter indicated that she was not familiar with the recording program. Defendant had no other way to play the DVD.[1]

The room where Defendant was interviewed at the Sheriff's Office was also equipped with video and audio capabilities, but no recording was made. Deputy Leblanc put him in the secured room and left him there.

When Agent Hazelwood arrived at the Sheriff's Office, he was briefed "as to the stop, the details of the stop, and the events that had led up to where they were at that moment," and he was introduced to Defendant. Agent Hazelwood told the

---

[1]This court was also unable to view the video.

6

jury that he was brought into the case, based on Defendant's cooperation, to try to identify persons that the drugs may have been going to, the extent of Defendant's involvement, and from where the drugs originated. Agent Hazelwood was not concerned with a video or audio taped statement because he was not trying to obtain a confession, but to see where the drugs were going.

> [A]bsent a showing of prejudice, a conviction will not be overturned on the ground that the best evidence was not produced. [*State v. Gaskin,* 412 So.2d 1007 (La.1982)]. It has been held that the testimony of one who hears a confession is always best evidence of it. *People v. Vaughn,* 155 Cal.App.2d 596, 318 P.2d 148 (1957). Likewise, testimony by participants of what was said in a conversation have been held as equally admissible as a tape of the conversation to establish what was said. *United States v. Gonzales–Benitez,* 537 F.2d 1051 (9th Cir.1976), *cert. denied,* 429 U.S. 923, 97 S.Ct. 323, 50 L.Ed.2d 291 (1976); *United States v. Rose,* 590 F.2d 232 (7th Cir.1978), *cert. denied,* 442 U.S. 929, 99 S.Ct. 2859, 61 L.Ed.2d 297 (1979). Louisiana courts have allowed officers to testify in the place of playing taped video or audio recordings of confessions to the jury.

*State v. McGuffie*, 42,069, p. 8 (La. App. 2 Cir. 8/1/07), 962 So.2d 1111, 1117, *writ denied,* 07-2033 (La. 2/22/08), 976 So.2d 1283. The *McGuffie* defendant argued that the trial court erroneously allowed a police officer's testimony about his statements where the tapes of those statements had been lost. The second circuit noted, "The law does not require the production of nonexistent portions of a confession or portions which cannot be recalled." *Id.* at 1116 (citing *State v. Arnold,* 466 So.2d 520 (La.App. 3 Cir.), *writ denied,* 470 So.2d 124 (La.1985)).

Defendant had ample opportunity at the hearing on the motion to suppress and at trial to confront and cross-examine Deputy Leblanc and Agent Hazelwood about any relevant evidence. Certainly a video of the stop and the interview would have been helpful evidence. Its unavailability, however, does not create a Confrontation Clause issue where full cross-examination occurred, and the jury

7

heard the testimony of those who had witnessed Defendant's confession. This assignment of error lacks merit.

## ASSIGNMENT OF ERROR NUMBER THREE

Defendant reserved his right to file a supplemental brief regarding the trial court's response to a question posed by the jury during deliberations. On February 15, 2012, this court ordered the court reporter to transcribe the portion of the jury trial regarding this issue. The supplemental record was filed on March 6, 2012. Defendant's counsel notified this court by letter dated March 14, 2012, that she would not be filing a supplemental brief. Thus, this issue is deemed abandoned. Uniform Rules—Courts of Appeal, Rule 2-12.4.

## *PRO SE* ASSIGNMENT OF ERROR NUMBER ONE

As a *pro se* assignment of error, Defendant asks whether one can "block traffic when there is no traffic in the vicinity?" Deputy Leblanc testified at length about how he observed Defendant near the 110 mile marker on Interstate 10 traveling in the left lane at 60 miles per hour, impeding the flow of other vehicles that were unable to pass Defendant. The traffic stop occurred near the 114 mile marker, after Deputy Leblanc observed Defendant's driving for approximately four miles.

Nevertheless, Defendant claims on appeal "there was no traffic in his general vicinity for him to block." Defendant did not raise this issue at trial, and he cannot raise it for the first time on appeal. La.Code Crim.P. art. 841. This assignment of error lacks merit.

## *PRO SE* ASSIGNMENT OF ERROR NUMBER TWO

Defendant further argues "[d]efense counsel should have moved to suppress the evidence that resulted from the search" on grounds that raw marijuana has no

8

strong odor, and "[f]ailure to do so would constitute ineffective assistance." He further argues that "denial of such a motion would be reversible error, showing that defendant was prejudiced by said ineffectiveness."

The record shows that defense counsel did file a motion to suppress the marijuana on grounds it was illegally seized without a warrant or consent, and no probable cause existed for the traffic stop. At trial, defense counsel pointed out that the marijuana found in the trunk was "taped up like Fort Knox" so that it could not be smelled. The record does not reveal that Defendant requested a demonstration to the jury to show the marijuana had no odor, and it does not show the trial court prevented such a demonstration from taking place. Indeed, in his closing argument, defense counsel said, "I took one of the blocks right there and gave it to the deputy. I held it in front the jury. I said, 'Can you smell it?'" The record does not reflect a factual basis for this issue. Ultimately, the jury found the law enforcement officers' testimony more credible than Defendant's self-proclaimed ability to conceal illegal contraband. We see no reason to disturb the jury's finding, and we assign no merit to this argument.

### *PRO SE* ASSIGNMENT OF ERROR NUMBER THREE

Defendant argues his seven-year sentence is excessive. Louisiana Code of Criminal Procedure Article 881.1(A) and (E) requires a defendant to make or file a motion to reconsider his sentence within thirty days of imposition of the sentence. A defendant who fails to make or file such a motion is precluded from raising any objection to the sentence on appeal. *State v. White*, 03-1535 (La.App. 3 Cir. 4/28/04), 872 So.2d 588; *State v. Prudhomme*, 02-511 (La.App. 3 Cir. 10/30/02), 829 So.2d 1166, *writ denied*, 02-3230 (La. 10/10/03), 855 So.2d 324. Defendant did not make or file a motion to reconsider his sentence in the trial court.

9

Nevertheless, we review Defendant's argument as a bare claim of excessiveness.

*State v. Baker*, 08-54 (La.App. 3 Cir. 5/7/08), 986 So.2d 682.

This court has set out a standard to be used in reviewing excessive sentence

claims:

> La.Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 [p.5] (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 [p. 3] (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d

1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

To decide whether a sentence shocks the sense of justice or makes no

meaningful contribution to acceptable penal goals, this court has held:

> [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

Applying the *Smith* factors, the nature of Defendant's offense was not violent, but it involved a large amount–approximately one hundred pounds–of marijuana.  The trial court stated that Defendant's presentencing investigation report revealed one prior conviction for aggravated assault.  However, the penalty for aggravated assault does not include imprisonment at hard labor, and therefore, is not a felony.  La.R.S. 14:2(A)(4); 14:37(B).  Thus, this is Defendant's first felony conviction.  The trial court sentenced Defendant to seven years at hard labor and stated that it was an appropriate sentence considering the substantial amount of marijuana involved.

The possible sentencing exposure for possession of sixty to two thousand pounds of marijuana is five to thirty years in prison and a fine of fifty to one hundred thousand dollars.  La.R.S. 40:966(F)(1).  The possible exposure for an attempted offense is half the largest fine and/or half the longest term of imprisonment for the completed offense.  La.R.S. 14:27.  Thus, the sentencing range here is zero to fifteen years and/or a fine of fifty thousand dollars.

Given the large amount of marijuana Defendant was convicted of hauling across our state, this mid-range sentence neither shocks our conscience nor represents an abuse of the trial court's discretion.

### DECREE

Defendant's conviction and sentence are affirmed.

**AFFIRMED**.

11

STATE OF LOUISIANA

VERSUS

MARQULE CRAFT


**THIBODEAUX, Chief Judge, concurring in part and dissenting in part.**


I agree with the majority that the defendant's conviction should be affirmed. I disagree with the imposition of a seven-year sentence at hard labor.

The cases relied upon by the majority are inapposite and do not support its position. *State v. White*, 11-1059 (La.App. 3 Cir. 4/4/12), 87 So.3d 318 involved, as the majority acknowledges, a long-time felony offender. The defendant in *White* had six previous felonies. Here, this defendant has no prior felony convictions. In *State v. Brown*, 02-1382 (La.App. 3 Cir. 4/2/03), 842 So.2d 1181, *writ denied*, 03-1224 (La. 11/7/03), 957 So.2d 491, the defendant admitted ownership of the marijuana. In fact, *Brown* referenced the comments of the trial judge who said "this would be different if it was just a possession with intent to distribute that, in a weak moment, you got some marijuana and transported it for financial gain. This is, you grew this marijuana which took an extended period of time and it involved more than just one weak moment." *Id*. at 1184. In this case, the defendant was charged with possession of marijuana, not possession with intent to distribute. Second, in this case, unlike *Brown*, the defendant did not grow the marijuana nor did he own it. He was simply acting as a "mule" in transporting the marijuana for someone else.

The seven-year sentence is not proportionate to the severity of this defendant's crime and makes no meaningful contribution to any acceptable goal of

punishment. It simply results in adding to Louisiana's reputation as having the most prisoners per capita of any area in the world and the most prisoners with the longest sentences.

For the foregoing reasons, I respectfully dissent in part.