STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 KA 0361

STATE OF LOUISIANA

VERSUS

TREVEON ROBINSON

Judgment Rendered: __FEB 2 1 2024__

Appealed from the
18th Judicial District Court
In and for the Parish of Pointe Coupee
State of Louisiana
Docket No. 83,365 c/w 83,366

The Honorable J. Kevin Kimball, Judge Presiding

| | |
|---|---|
| Antonio M. "Tony" Clayton<br>District Attorney<br>Terri Russo Lacy<br>Assistant District Attorney<br>Port Allen, Louisiana | Counsel for Appellee,<br>State of Louisiana |
| Chad Aguillard<br>Kristen Canezaron<br>Nishant Bhushan<br>Ali Meronek<br>Assistant District Attorneys<br>New Roads, Louisiana | |
| Mary Constance Hanes<br>New Orleans, Louisiana | Counsel for Defendant/Appellant,<br>Treveon Robinson |

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

**MILLER, J.**

The defendant, Treveon Robinson, was charged by grand jury indictment with second degree murder (count one), a violation of La. R.S. 14:30.1, first degree feticide (count two), a violation of La. R.S. 14:32.6, attempted second degree murder (count three), a violation of La. R.S. 14:27 and La. R.S. 14:30.1, and being a convicted felon in possession of a firearm or carrying a concealed weapon (count four), a violation of La. R.S. 14:95.1.[1] He pled not guilty and, after a jury trial, was found guilty as charged on all four counts. The trial court denied the defendant's motion for new trial, and sentenced the defendant to life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on count one; fifteen years imprisonment at hard labor on count two; fifty years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on count three; and twenty years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence on count four, with each sentence to be served consecutively.

The defendant now appeals, assigning as error the trial court's incorrect application of La. C.Cr.P. art. 401(A)(5) during jury selection and its denial of his two motions for mistrial. For the following reasons, we affirm the convictions and sentences.

## FACTUAL BACKGROUND

In the early morning hours of February 14, 2019, the victims, Kendell Mingo and his pregnant girlfriend Aerial Edwards,[2] were asleep on the couch in their home at 15134 Russell Lane. Mingo awoke to the sound of gunshots and looked around the house to investigate. When he attempted to wake Edwards, he realized

---

[1] The defendant was tried simultaneously with his co-defendant, Andre Griffin. Also charged in this matter were co-defendants, Nicholas Robinson, Jericho Hamburg, and Darion Springer.

[2] The record contains various spellings of the names of Kendell Mingo and Aerial Edwards. The spellings reflected in the grand jury indictment are used herein.

2

she had been shot and he subsequently called 911 at approximately 1:42 a.m. The bullet struck Edwards in the abdomen and caused a significant amount of blood loss, killing both her and her unborn child.

Through the course of their investigation, officers with the Pointe Coupee Parish Sheriff's Office learned that approximately one week prior to the shooting, the defendant's brother, Darion Springer, stole Mingo's firearm at a bonfire. After the bonfire, Springer received threatening text messages and phone calls telling him to return Mingo's gun. Mingo's stepbrother, Dequan Guidry, then went to Springer's house, allegedly with a gun, and threatened Springer's mother and family.

Springer eventually confessed that he was in the vehicle with the individuals who shot at the residence on Russell Lane. According to Springer, on the night of February 13, 2019, Springer, Andre Griffin, Nicholas Robinson, Jericho Hamburg, and the defendant rode around looking to beat up Nigel Gremelsbacker "[b]ecause he had stolen something." Unable to locate Nigel, Springer suggested that they instead look for Mingo, in order to retaliate for Mingo's brother's threats against Springer and his family. They drove down Russell Lane, saw Mingo's car in front of the house, and turned around, heading back towards the house. According to Springer, the defendant, seated in the passenger seat, and Andre Griffin, seated in the driver seat, then leaned out of the car windows and shot at the house.[3] Springer, Hamburg, and Nicholas Robinson were seated in the backseat. Although Springer tried to shoot, his gun jammed.

Pursuant to the investigation, officers issued arrest warrants for Andre Griffin, Nicholas Robinson, Darion Springer, Jericho Hamburg, and the defendant.

## DISCUSSION

### Exclusion of Prospective Jurors

---

[3]Although Springer testified that the defendant fired shots at the house, Hamburg testified that the defendant's gun jammed.

3

In his first assignment of error, the defendant argues that the trial court erred in applying an incorrect version of La. C.Cr.P. art. 401(A)(5) during jury selection to exclude prospective jurors with prior felony convictions.

An accused in a criminal case is constitutionally entitled to a full and complete *voir dire* examination and to the exercise of peremptory challenges. La. Const. art. I, §17(A). The purpose of *voir dire* examination is to determine prospective jurors' qualifications by testing their competency and impartiality and discovering bases for intelligent exercise of cause and peremptory challenges. State v. Mills, 2013-0573 (La. App. 1st Cir. 8/27/14), 153 So. 3d 481, 486, writs denied, 2014-2027 (La. 5/22/15), 170 So. 3d 982 and 2014-2269 (La. 9/18/15), 178 So. 3d 139. The question of a juror's qualifications is addressed to the sound discretion of the trial judge. Therefore, the trial court's rulings will not be disturbed unless a review of the *voir dire* as a whole indicates an abuse of that discretion. State v. Folse, 2018-0152 (La. App. 1st Cir. 9/21/18), ___ So. 3d ___, 2018 WL 4520465, *6, writ denied, 2018-1740 (La. 4/22/19), 268 So. 3d 296.

Louisiana Code of Criminal Procedure article 401 sets forth the general juror qualifications with regard to citizenship, residence, age, ability, and criminal history. Prior to its amendment in 2021, La. C.Cr.P. art. 401(A)(5) provided that, in order to qualify to serve as a juror, a person must "[n]ot be under indictment for a felony nor have been convicted of a felony for which he has not been pardoned by the governor." See 2010 La. Acts, No. 438, § 1. The statute was amended in August of 2021 and now provides:

> A. In order to qualify to serve as a juror, a person shall meet all of the following requirements:
>
> ***
>
> (5) Not be under indictment, incarcerated under an order of imprisonment, or on probation or parole for a felony offense within the five-year period immediately preceding the person's jury service.

La. C.Cr.P. art. 401(A)(5); 2021 La. Acts, No. 121, § 1.

4

The matter proceeded to trial by jury on March 28, 2022. During jury selection, the trial court recited the juror qualifications, referencing the prior version of La. C.Cr.P. art. 401(A)(5). A prospective juror, Joseph Stoute, stated that he was convicted of a felony ten years prior. The trial court believed that Stoute needed an actual pardon from the governor to serve, as provided under the previous version of La. C.Cr.P. art. 401(A)(5), but deferred excusing Stoute until the issue could be more thoroughly researched.

On appeal, the defendant contends that the record does not mention Stoute again, and that he seemed to have been dismissed from the jury based on the court's erroneous statement of the current law. However, the record reflects that Stoute was eventually seated on the fourth jury panel. Because a jury was selected and sworn from jury panels one, two, and three, the parties never reached jury panel four during *voir dire*. Therefore, Stoute was not prevented from serving as a juror based on his status as a convicted felon, and the defendant was not prejudiced by the trial court's initial error. Accordingly, this assignment of error is without merit.

## Motions for Mistrial

In his second and third assignments of error, the defendant argues that the trial court erred in denying his two motions for mistrial. Initially, he complains that the State announced in front of the jury that it was calling Nicholas Robinson to testify even though the State knew the witness planned to invoke his privilege against self-incrimination. Finally, the defendant contends that he was prejudiced when Sergeant Perry Lambert testified regarding the contents of a destroyed surveillance videotape.

Louisiana Code of Criminal Procedure article 775 requires a mistrial upon motion of the defense when "prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial[.]" A mistrial is a drastic

5

remedy that should only be declared upon a clear showing of prejudice by the defendant. State v. Cowart, 2022-1318 (La. App. 1ˢᵗ Cir. 6/2/23), 369 So. 3d 887, 890. The determination of whether a mistrial should be granted is within the sound discretion of the trial court, and the denial of a motion for mistrial will not be disturbed on appeal absent an abuse of discretion. State v. Dardar, 2021-0860, 2021-0861, 2021-0862 (La. App. 1ˢᵗ Cir. 2/25/22), 340 So. 3d 1110, 1119, writ denied, 2022-00533 (La. 5/24/22), 338 So. 3d 1192.

## Invocation of Fifth Amendment Right

In all criminal cases, a person has a privilege against self-incrimination and "shall [not] be compelled to give evidence against himself." La. Const. art. I, § 16; U.S. Const. amend. V; La. R.S. 15:276. Claims of privilege are preferably determined outside the presence of the jury since the jury may give undue weight to such a claim. See State v. Wille, 559 So. 2d 1321, 1337 (La. 1990). It is impermissible for either the prosecution or the defense to knowingly call a witness who will assert a privilege, solely for the purpose of impressing upon the jury the fact that the privilege is being claimed. See State v. Haddad, 99-1272 (La. 2/29/00), 767 So. 2d 682, 686, cert. denied, 531 U.S. 1070, 121 S.Ct. 757, 148 L.Ed.2d 660 (2001); State v. Victores, 486 So. 2d 897, 899-900 (La. App. 1ˢᵗ Cir. 1986). Moreover, "when the State knows that a witness will exercise a valid privilege, it is reversible error to require the witness to exercise his privilege in front of the jury." State v. Day, 400 So. 2d 622, 624 (La. 1981); State v. Trosclair, 584 So. 2d 270, 280 (La. App. 1ˢᵗ Cir.), writ denied, 585 So. 2d 575 (La. 1991).

Throughout the trial, Nicholas Robinson was identified as one of the individuals involved in the shooting on Russell Lane. During a bench conference, defense counsel informed the trial court that Nicholas Robinson's attorney was in the courtroom and expressed a concern that the State would call his client to the stand, knowing that he planned to invoke his Fifth Amendment right against self-

6

incrimination. The trial judge stated that if the State knew that Nicholas Robinson was invoking his right to remain silent, there was no reason to do so before the jury. The State reassured that they would inform the court before they called him to the stand.

At the conclusion of Jericho Hamburg's testimony, and notwithstanding previous assurances to the contrary, the State called Nicholas Robinson to the stand in front of the jury. Defense counsel immediately requested a "sidebar" and a bench conference was held where he raised an objection outside of the hearing of the jury. Defense counsel argued that the State knew Nicholas was going to assert his Fifth Amendment privilege. Nicholas's attorney confirmed that Nicholas would invoke his privilege and that he had previously informed the State that Nicholas would do so. Defense counsel moved for a mistrial based on Nicholas being "parad[ed]" through the courtroom during another witness's testimony to suggest to the jury that Nicholas's invocation of his right not to testify was an indication of his guilt, thereby prejudicing the defendant. Relying on State v. Edwards, 419 So. 2d 881 (La. 1982), the trial court denied the motion, reasoning that although the State called his name, Nicholas was not sworn in as a witness, nor did he invoke his privilege in front of the jury.[4]

Based upon our review of the record, we find that the defendant failed to demonstrate prejudice such that a mistrial was necessary, and that the trial court did not abuse its discretion in denying the defendant's motion. Although the State improperly called Nicholas to testify knowing that he would invoke his Fifth Amendment privilege, the defendant's substantial rights were not affected. See La. C.Cr.P. art. 921. Once the trial court determined that Nicholas would invoke his

---

[4]In Edwards, the Louisiana Supreme Court held that a defendant could not compel witnesses to invoke their Fifth Amendment rights before the jury, in order for the trier of fact to draw an inference from the invocation. The court noted that it was clear from the record that the defendant was aware that the witnesses would not offer any testimony, and the defendant wished to call them solely for the purpose of having them invoke their privilege in front of the jury. Edwards, 419 So. 2d at 891-93.

privilege, he was properly sworn in and questioned outside the presence of the jury. Because Nicholas did not exercise his privilege in front of the jury, the jury could not "draw evidentiary inferences from the fact that [he] claimed the privilege." See Wille, 559 So. 2d at 1337-38; State v. Walker, 2022-695 (La. App. 3rd Cir. 4/19/23), 363 So. 3d 1265, 1271. Therefore, the trial court correctly disallowed Nicholas from taking the stand and exercising his privilege against self-incrimination in the presence of the jury. See Haddad, 767 So. 2d at 686; Edwards, 419 So. 2d at 892; see also Victores, 486 So. 2d at 899-900.

Because the trial court intervened prior to Nicholas invoking his right against self-incrimination within the presence of the jury, we cannot conclude that the State's improper conduct made it impossible for the defendant to have a fair trial. See La. C.Cr.P. art. 775; State v. Gerard, 96-366 (La. App. 5th Cir. 11/14/96), 685 So. 2d 253, 256-59; cf. Day, 400 So. 2d at 625. Accordingly, the trial court did not abuse its discretion in denying the defendant's motion for mistrial, and this assignment of error is without merit.

### Officer Testimony Regarding Contents of Destroyed Video

Louisiana Code of Evidence article 1002 requires the original document to prove the contents therein. However, under La. C.E. art. 1004(1), the original of a recording is not always required to prove its contents, and other evidence of the contents of the recording is admissible if all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith. See State v. Hines, 2011-2082 (La. App. 1st Cir. 6/8/12), 2012 WL 2061513, *5 (unpublished).

At trial, the defendant's theory was that Kendal Mingo had many enemies who could have committed the shooting on Russell Lane, "particularly" Nigel Gremelsbacker. Mingo and Nigel both admitted that there was "bad blood" between the two of them. Prior to the shooting, Mingo allegedly pulled a gun on

8

Nigel and created an online video where he threatened to kill Nigel.[5] Sergeant Perry Lambert, with the Pointe Coupee Parish Sheriff's Office, testified that although Nigel was initially a suspect in the shooting, he was eventually excluded based on information obtained through the investigation, including interviews, phone records, and surveillance videos.

Defense counsel then asked for a sidebar, noting that he never received any video surveillance in discovery. The State indicated that shortly before Sergeant Lambert was called to testify, he provided information to the State that he obtained surveillance video footage during his investigation and this video footage was stored on a hard drive, which was inadvertently dropped and destroyed by another officer. At this point the defendant moved for a mistrial. After a hearing on the matter, the trial court denied the defendant's motion for a mistrial, finding that the State did not purposefully destroy or withhold the surveillance footage. The trial court further ruled that Sergeant Lambert could testify as to what the surveillance footage showed.

The surveillance videos at issue depicted a vehicle, in which Nigel was a passenger, within the vicinity of Russell Lane around the time of the shooting. However, given the time that Nigel passed in front of a residence on Cline Drive, and the distance between Cline Drive and Russell Lane, Sergeant Lambert determined that Nigel would not have been able to travel from Cline Drive to Russell Lane and commit the shooting, based on the time that Mingo called 911. Accordingly, in conjunction with other corroborating evidence, Sergeant Lambert excluded Nigel as a suspect.

On appeal, the defendant argues, citing Johnson, 704 So. 2d at 1274-75, that the trial court erred in relying upon Sergeant Lambert's testimony that there was no

---

[5]Mingo denied that either of these events occurred. However, Nigel told police that Mingo pulled a gun on him, and police showed him the video of Mingo threatening him. Springer also confirmed the existence of the video.

bad faith on the part of the State, rather than hearing testimony from someone with personal knowledge of the videos' destruction. The defendant further contends that he was prejudiced by Sergeant Lambert's testimony explaining how he excluded Nigel as a suspect based on the surveillance videos.

Louisiana courts have consistently allowed officers to testify in the place of playing taped video or audio recordings to the jury, where the defendant does not suffer prejudice as a result of the video not being produced. See, e.g., Hines, 2012 WL 2061513 at *5-6 (finding no error in allowing the officers' testimony regarding contents of defendant's lost recorded statement where defendant's counsel had the opportunity to cross-examine the officers and there was no finding of bad faith); State v. Craft, 2012-0076 (La. App. 3rd Cir. 10/3/12), 99 So. 3d 1108, 1114, writ denied, 2012-2389 (La. 4/19/13), 111 So. 3d 1029 (finding no error in allowing the officers' testimony regarding contents of unavailable video recordings where defendant's counsel had the opportunity to cross-examine the officers and the jury heard testimony of those who witnessed defendant's confession); State v. McGuffie, 42,069 (La. App. 2nd Cir. 8/1/07), 962 So. 2d 1111, 1117, writ denied, 2007-2033 (La. 2/22/08), 976 So. 2d 1283 (finding no error in allowing the officer's testimony regarding contents of defendant's lost recorded statement where defendant's counsel had the opportunity to cross-examine the officer, the State disclosed tapes were missing prior to trial, and there was no finding of bad faith).

In Johnson, the defendant argued the trial court erred in allowing testimony regarding the contents of a store's surveillance videotape, which was erased prior to trial. Johnson, 704 So. 2d at 1273. Three officers testified that they viewed the videotape on the night of the incident, and the store owner testified that the videotape was inadvertently recorded over the next day. Id. The trial court found that there was no bad faith on the part of the State, and defense counsel conducted

an extensive cross-examination of each witness. Id. at 1274. The appellate court concluded that the officers' testimony, combined with the corroborating testimony of the store owner, was reliable and therefore admissible. Id. at 1274-75.

Based on the record before us, we cannot conclude that the trial court erred in allowing Sergeant Lambert to testify regarding the contents of the surveillance videos. In the instant case, the trial court specifically found that the videos were not destroyed in bad faith by the State, and there is nothing in the record to suggest otherwise. Although the defendant contends that the trial court should have also heard testimony from someone with personal knowledge of the videos' destruction, like in Johnson, the trial court was not required to do so. Where "testimony shows that the original is not available and there is no bad faith by the [S]tate[,]" the production of the original evidence is not required. See Johnson, 704 So. 2d at 1274. Therefore, Sergeant Lambert's testimony alone was sufficient for the trial court to determine that there was no bad faith on the part of the State. See State in the Interest of J.D., 154 So. 3d at 730-31 (trial court properly allowed investigating officer to testify regarding contents of surveillance videotape not produced at trial, where officer, although not involved in video's unavailability, was thoroughly cross-examined).

Finally, we find no abuse of discretion in the trial court's denial of the motion for mistrial. A mistrial is a drastic remedy that should only be declared upon a clear showing of prejudice by the defendant. See La. C.Cr.P. art. 775; Cowart, 369 So. 3d at 890. Herein, the defendant failed to show that he suffered any prejudice as a result of the original video not being produced. Defense counsel thoroughly cross-examined Sergeant Lambert on his recollection of the videotapes, as well as played for the jury portions of interviews, wherein Sergeant Lambert specifically discussed the contents of the videos. Whether the videotapes may have been more reliable than Sergeant Lambert's testimony goes to the weight,

11

rather than the admissibility, of the evidence. See Hines, 2012 WL 2061513 at *6; McGuffie, 962 So. 2d at 1117. Furthermore, Sergeant Lambert's testimony was merely cumulative of previously admitted testimony, which confirmed that Nigel was in the vicinity of Russell Lane prior to the time of the shooting, but ultimately excluded him as a suspect.[6] Defense counsel likewise elicited testimony that Nigel and Mingo had ongoing problems, which included violent threats and physical altercations involving a gun. Therefore, the defendant was able to present his defense that Nigel was the shooter, and Sergeant Lambert's reliance on the surveillance videos in his exclusion of Nigel as a suspect did not prejudice the defendant.

Accordingly, this assignment of error is without merit.

**Patent Error**

Pursuant to La. C.Cr.P. art. 920(2), an appellate court is limited in its review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. State v. Kimble, 2023-0176 (La. App. 1st Cir. 9/21/23), ___ So. 3d ___, 2023 WL 6158506, *6. After a careful review of the record, we have found one patent error.

On count four, the trial court failed to impose the mandatory fine of not less than one thousand dollars nor more than five thousand dollars. La. R.S. 14:95.1(B). Accordingly, the defendant's sentence, which did not include the mandatory fine, is illegally lenient. However, since the sentence is not inherently prejudicial to the defendant, and neither the State nor the defendant has raised this

---

[6]Sergeant Lambert testified that:

> [B]ased on the interviews that we received from multiple individuals just to name them, not to say anything in interview, but Ms. Harley, Ms. Hailey, Ms. Alexis, Mr. Nigel himself, and Mr. Quan, we were able to put him in a certain location at a certain time. They gave us a time frame at which time they parted.

> And based on information from the phone records and also videos that we had obtained, we were able to exclude Mr. Nigel Gremelsbacker as being able to be on Russell lane at the time of the shooting, thereby excluding him from being a suspect.

sentencing issue on appeal, we decline to correct this error. <u>See</u> <u>Kimble</u>, 2023 WL 6158506 at *6.

## CONCLUSION

For the above and foregoing reasons, the defendant's convictions and sentences are affirmed.

**CONVICTIONS AND SENTENCES AFFIRMED.**